A. W. WARREN, Appellant, v. RAY COUNTY COAL COMPANY, Respondent.

A. W. WARREN, Appellant, v. CRAWFORD WILSON COAL COMPANY, Respondent.

Kansas City Court of Appeals, January 6, 1919.

1. CONTRACTS: Unilateral Contracts: Mutuality: Consideration. To make a contract unilateral and void it is essential that only one party be obligated. If the contract imposes obligations on both parties it is not unilateral, although the obligation on one may be more onerous than on the other.

2. ————: Character of Contract: Damages. If the contract requires one party to use his best effort to make sales of coal for the other, it is an obligation on such party and the fact that he may try to make a sale and fail, or that he may not try at all, will not affect the *character* of the contract. The contract is valid, though there may be an action of damages for such failure.

3. ————: Breach of Contract to Furnish Coal: Equitable Relief: Mandatory Injunction. Where a party is engaged to contract and sell coal for another which coal is of a peculiar character which cannot be readily supplied from other fields, and after such party makes contracts, the other refuses to furnish him with the coal to meet his sales, thereby subjecting him to suits for damages and destroying his reputation, he may have equitable relief by mandatory injunction.

4. ————: Breach of Contract: Personal Service. A contract with a broker to sell coal in certain mines is not so far personal as to prevent such broker from employing assistants in running the business. The fact that such broker is taken into the army is not an abandonment of the contract, so long as he still conducts the business.

Appeal from Ray Circuit Court.—*Hon. Frank P. Divelbiss*, Judge.

REVERSED AND REMANDED (*with directions.*)

Culver & Phillip, for appellant.

Lavelock & Kirkpatrick, Geo. W. Crowley and Garner, Clark & Garner for respondent, Ray County Coal Company.

Jos. S. Rust, M. M. Millgan and A. M. Clark for respondent, Crawford-Wilson Company.

ELLISON, P. J.—On the 14th day of February, 1917, plaintiff entered into separate contracts with defendant coal companies, wherein defendants employed plaintiff to sell the output of their coal mines located at Richmond, Missouri. The two contracts are identical (except parties and signatures) and provide as follows;

"1. This agreement between Crawford-Wilson Coal Company of Richmond, Missouri, first party, and A. W. Warren, doing business under the firm name of A. W. Warren & Co., of St. Joseph, Missouri, second party, witnesseth;

2. That said first party has this day appointed said second party, as its exclusive agent, to handle and sell the entire output of lump coal from said first party's mine at Richmond, Missouri, known as mine No. 8, from March 1, 1917, to March 1, 1918, on the following terms and conditions;

3. The said first party agrees to load first-class merchantable lump coal and to ship same on orders supplied by said second party.

4. The said second party agrees to use its best endeavors to sell the output of said first party's mine at the full market price in effect from day to day and to pay for same on basis of prices realized, less a commission of ten per cent of such selling prices on all coal sold for two dollars and fifty cents ($2.50) per ton or less, f. o. b. cars at the mines, and on all coal sold at prices in excess of two dollars and fifty cents (2.50) per ton, f. o. b. cars at the mines, said second

party shall be entitled to a commission of twenty-five cents (25c) per ton, plus one-half of the price realized in excess of two dollars and fifty cents (2.50) per ton, provided, however, that without the written consent of said party no sales of coal shall be made under this contract that nets the said first party a less price than one dollar and ninety cents ($1.90) per ton, f. o. b. cars at the mines.''

The contracts further provide that plaintiff should make all collections and assume all risks of bad accounts for coal sold under the contracts; that plaintiff was to advance the money necessary to meet the semi-monthly pay-roll for coal handled under the contracts. The contracts were changed on June 1, 1917, so that no coal might be sold to net less than two dollars and thirty cents (2.30) a ton to defendants without their written consent.

On or about October 25, 1917, defendants ceased to deliver coal and notified plaintiff that they did not regard said contracts as binding. Up until that day plaintiff sold the entire output of the mines and did every thing that was required of him to be done under the contracts. Thereafter plaintiff demanded the entire output of the mines, which was refused, and he filed petitions in the circuit court of Ray County asking that defendants be enjoined from violating the terms of their contracts with him and from refusing to comply and fulfill said contracts and from ''failing and refusing to furnish and deliver to the plaintiff the entire output'' of the mines, ''as ordered and requested by plaintiff according to the terms of said contracts, during the period mentioned therein so long as plaintiff shall keep and perform or offer to keep and perform his agreements therein contained.''

The court issued temporary injunctions enjoining defendants from failing and refusing to deliver to plaintiff, or his orders, the entire output of their mines or from ''delivering all or any part of the entire output of the coal of said'' mines ''to any person or persons other than plaintiff or his orders.'' The court there-

after sustained defendants' motions for a new trial and plaintiff has appealed.

Defendants contend that the contracts are unilateral and void for want of mutuality. We think the position is not sound. In the discussion of unilateral contracts, mutuality and a consideration are involved. If the subject of dispute is one-sided, it hardly should be called a contract at all. It is true that what was originally unilateral may become bilateral and binding, but it only becomes so by losing its one-sided character and stands valid from the fact an obligation has arisen with a second party and thus mutuality, or a consideration, appears as the binding force. In other words, the law is but the practical enforcement of the old saying that "it takes two to make a bargain."

But mutuality of obligation, or a consideration for an obligation, only means that one party agrees to do one thing and the other some other thing. It does not mean that the respective undertakings, or obligations, shall be equal to, or commensurate, with one another. If it did, then every contract where one party agreed to do less than the other would be called unilateral merely because the obligation upon one party was not as great as upon the other.

If we should concede in the case before us that plaintiff's obligation is less onerous than defendant's, yet certainly it cannot be said that the contract did not impose *any* obligation upon him. He was employed to sell the production of defendant's coal mine and he engaged to make his best effort to sell it. He agreed to stand for all bad accounts he made, and to advance money to meet the semi-monthly payroll for the coal handled under the contract. Suppose, with his best endeavor, he only sold a portion of the output of coal, in such instance he guaranteed that the purchasers would pay, and he agreed to pay the labor which produced it. But further than this, suppose he failed to sell any of the coal, yet he was obliged to spend his time and necessarily some money, in his best endeavor to do so. If he failed to sell or refused to try to sell,

that was only a failure to comply with his contract, but had nothing to do with characterising the *nature* of the contract.

In Hudson v. Browning, 264 Mo. 58, 65, this is said by our Supreme Court concerning the validity of contracts in the respect here involved, "Mutuality of contract means that an obligation must rest upon each party to do or permit to be done something in consideration of the act or promise of the other, that is, neither party is bound unless both are bound."

"In a contract a promise is a good consideration for a promise, but there must be two promises to do some definite thing or things." But there is no intimation in that case respecting the nature of the obligation. It is essential that both parties be bound to certain things, in which case there is mutuality. [Barnes v. Bragg, 198 S. W. 73.]

We have authority sustaining the validity of contracts strikingly like this. In Emerson v. Pacific C. & N. Packing Co., 96 Minn. 1, the court states that the defendant agreed to pay a commission to the plaintiffs on sales of fish. The plaintiffs accepted the proposition and "obligated themselves, during the whole period named, to use their best efforts to sell defendants merchandise, and actually performed services in introducing and vending defendants' stock (just as was done in this case) and incurred and defrayed expenses thereunder." The court held that the promises were not all on one side, and that there was "mutuality of obligation."

In Spencer v. Taylor, 69 Kan. 493, it is held: "Where the contract sued on obligated T. and R. to sell and furnish S. the waters to supply the trade at a designated price, and obligated S. . . . to use his best endeavors to push the sales of said mineral waters in Wichita, such contract is not void for want of mutuality of obligation."

In Mueller v. Bethesda Springs Co., 88 Mich. 390, the defendant engaged the plaintiff to act as sole agent for the sale of mineral waters in Detroit for one year,

and plaintiff accepted the service but did not, in terms, agree to sell; The court held that an obligation on plaintiff's part to go out and sell was implied and therefore the contract was mutual. It seems clear that if the plaintiff in that case used his best endeavor to sell the water the fact that he might not succeed would be of no consequence in determining the nature of the contract. If he failed through his own fault, he would be liable in damages.

Defendant seems possessed of the idea that to make the contract valid, plaintiff should have obligated himself in any event to sell the entire output of coal, but we think there may be a valid obligation to try to do a thing as well as to succeed in doing it.

Defendant places reliance chiefly on Hudson v. Browning, 264 Mo. 58, and Reigart v. Coal & Coke Co., 217 Mo. 142. The cases are unlike the one before us in essential particulars. The contract involved in the first related to plaintiff furnishing defendant a lot of ties. The particular provision in fact and effect disclaimed any obligation on part of the plaintiffs. They agreed "to use every effort to secure as many of the 200 thousand ties *as their time, money and efforts will permit them.*" In other words, they would furnish the ties if they had the time and the money. This was pronounced by Judge GRAVES as "entirely too vague, indefinite and uncertain to be effective." If in the contract before us there had been added that plaintiff would "use his best endeavors" to sell defendants output *"if he had time."* And that he would pay the labor and all bad accounts, "if he had the money," there would be more likeness to the Hudson case. There is omitted from this contract the element which condemned the one in the Hudson case.

The Reigart case is likewise not applicable. That case concerned a written contract for furnishing coal. It obligated the coal company to furnish coal to Reigart but imposed no obligation on him to receive or buy it. There was no mutuality. But Reigart sought to validate the written contract by adding to it, by testimony in

parol to the effect that he was to go out and endeavor to sell the coal and make a market therefor. The court, through Judge Woodson, examined the question of his right, under the Statute of Frauds, to add the parol provision to the writing and determined that he could not do it and therefore the written contract, stripped of the verbal attachment, was invalid. By direct inference the case supports plaintiff's claim in the question before us. For here there is found in the writing what was endeavored to be added there by oral testimony.

But defendants say that "even if the contract is enforceable at law, no ground for equitable relief is shown. Authorities in support of this are not the rule in this State at this time; moreover we have a statute (Sec. 2584, R. S. 1909) which broadens the ground for the intervention of equity and justifying equitable relief "to prevent the doing of any legal wrong whatever, whenever in the opinion of the court an adequate remedy cannot be afforded by an action for damages." [Towne v. Bowers, 81 Mo. 491, 496; McAlister v. Graham, 200 Mo. App. 279; Sedalia B. Co. v. Sedalia Water Works, 34 Mo. App. 49, 54.] In the latter case we said: "We determined in Harris v. Township Board, 22 Mo. App. 465, on ample authority therein cited, that 'in this State it is not essential that the injury threatened shall be irreparable, to warrant a resort to an injunction;' nor that the defendant in all cases should be insolvent; it is sufficient if "an adequate remedy cannot be afforded by an action for damages." That damages would not be an adequate remedy in this case is apparent from the petition and the evidence. On the faith of the terms of his employment plaintiff had made numerous contracts with various customers to furnish them with coal; some of these with the special approval of defendants. Defendants, without cause, refused to perform their agreement with him and he became helpless in fulfillment of delivery in sales he had made. No other coal of like quality could be had and, unless he gets relief, he will be made subject to a

large number of suits for damages and his business reputation and good will will be ruined.

Next it is said that plaintiff broke the contract in that he joined the army and thereby ceased attention to the business. There are instances where one engages the personal services of another which cannot be delegated to assistants in one's employment. But this agreement was not of that kind. Plaintiff never abandoned his business. While in the army, stationed fifty or sixty miles away, he continued to run the business, as before. It had always required the active aid of a number of employees in different capacities, and it was never contemplated all things done under his contract with defendant should be performed individually by him. He probably employed additional help but he never undertook to sublet the business and we, therefore, find no ground for the position that plaintiff had broken the contract.

The case cited by defendant (Consolidated Fuel Co. v. St. Louis & S. W. Ry. Co., 250 Fed. 395) is not like this in its facts. It was an ordinary breach of contract for which damages were easily ascertainable. That decision really supports the case made by plaintiff. In the latter part of the opinion it is said: "that a contract relating to personal property may be specifically enforced in equity when the property is such that it cannot be obtained in the market, or only at great expense and inconvenience, and the failure to obtain would cause damage to complainant which could not be adequately compensated in an action at law."

We think a new trial should not have been granted, nor should the motion in arrest have been sustained. The orders to that effect will be reversed and the cause remanded with directions to enter the judgment for plaintiff. All concur.