## MIDDLETON v. HOLECROFT.

No. 21935.

Kansas City Court of Appeals.

Missouri.

June 7, 1954.

Nelson E. Johnson, Kansas City, for appellant.

Hammond C. Woods, Kansas City, for respondent.

CAVE, Presiding Judge.

Plaintiff (appellant) filed a petition in the magistrate court seeking to recover from the defendant $500 as liquidated damages for the breach of a written contract. The trial resulted in judgment for the plaintiff for the amount sued for and defendant appealed to the circuit court, where a jury was waived and the cause tried to the court, resulting in a judgment for defendant, from which the plaintiff perfected his appeal.

The petition alleged that plaintiff was engaged in the manufacture, installation and servicing of refrigeration machinery; that the defendant sought employment from the plaintiff in said work; that on the 10th day of August, 1948, the plaintiff and defendant entered into a written contract as follows:

"Employee Commission Contract

"Date 8–10–48

"John Holecroft

"Dear Sir: I propose to employ you to work for me for 15 months *at my option,* under the following conditions:
hereafter, $300. per month 8½ hours per day
6 days per week    7¢ car mileage
Any training which you and I consider necessary will be given you on your own time, I will furnish material and instruction. You will furnish and maintain your own small hand tools. Overtime or undertime to be on a straight time basis. *If I fail to offer you work as follows you are free to seek employment elsewhere; Car mileage plus the equivalent of 160 hours in any 31 consecutive days.* (Italics ours.)
If any cause prevents you from working for me, it is assumed that such cause would prevent you from working for others. You agree to assign me any rights in any inventions you might make while in my employ or for 6 months thereafter. On any repair work that you originate and collect for in full upon completion you will receive 10% commission on the total amount you collect plus salary as stated. You will be liable for the loss or damage of any equipment or materials entrusted to you, ordinary wear and tear excepted. If you do work contrary to our instructions or contrary to accepted practice, you will make good the resulting loss if I ask you to do so. If you breach any of the covenants herein contained you will immediately become liable for $500 as liquidated damages. If I deem it adviseable

for you to join any society or organization, you will do so and I will pay your initiation and membership fees. You are to follow instructions carefully and give me prompt, true, accurate and complete information at all times regarding any matter affecting me. If I pay you car mileage you are to provide auto insurance acceptable to me.

"Sincerely yours,
"H. A. Middleton

"Accepted *John Holecroft*".

The petition further alleged that pursuant to the contract, the defendant entered into the employ of the plaintiff on or about the 10th day of August, 1948, and remained in his employ for a short time; that defendant, in violation of the provisions of the contract and without cause or excuse, left the employ of the plaintiff and refused further to perform services for the plaintiff, although requested so to do; that the plaintiff was willing to employ the defendant in accordance with the provisions of the contract and that the plaintiff had fully performed all the obligations thereon on his part, but that the defendant had breached the same; that under the provisions of the contract, any breach thereof by the defendant created a liability to the plaintiff in the sum of $500 in liquidated damages, for which amount judgment was prayed.

It is obvious that the alleged breach is that defendant refused to work for plaintiff, although requested so to do. It is also obvious that this is a most unusual instrument.

There is very little conflict in the evidence. It is undisputed that the parties signed the written instrument; that defendant worked for plaintiff for 5½ hours on August 11, 1948; and quit work of his own volition and did not return.

Plaintiff testified that he requested defendant to return to work a number of times, and that on August 19th he went to defendant's home to urge him to return; and that the defendant told him he had two or three jobs of his own to do and he might call him after that time, but did not

do so. Defendant stated that when plaintiff came to his home on that occasion, defendant's wife was ill and he could not return to work, and when he told plaintiff the situation, plaintiff replied, "You better be to work in the morning or else it will just be too bad for you"; that he was offended by this remark and did no more work for plaintiff.

The first question presented is whether the written instrument was a valid contract at the time of its execution; and second, if not, did it become a valid contract by events occurring after its execution which are discussed later in this opinion. The briefs discuss whether the contract was unilateral or bilateral at the time of its execution and whether it lacked mutuality.

The general subject of unilateral and bilateral contracts and the necessity for mutuality is discussed at length in Williston on Contracts, Vol. 1, Sections 13 and 141. We need not undertake the task of distinguishing the various decisions dealing with this subject because the terms and provisions of the contracts under consideration have much to do with their classification. We shall confine our discussion to the written instrument before us. However, in Aden v. Dalton, 341 Mo. 454, 107 S.W.2d 1070, the court quoted with approval certain general principles which we must keep in mind. These are 107 S.W.2d 1073: "'A unilateral contract is one in which no promisor receives a promise as a consideration for his promise. A bilateral contract is one in which there are mutual promises between two parties to the contract; each party being both a promisor and a promisee. * * Mutuality of contract means that an obligation rests upon each party to do or permit to be done something in consideration of the act or promise of the other; that is, neither party is bound unless both are bound.'"

There are certain provisions of the instrument that have a direct bearing on the question under consideration, viz.: "I propose to employ you to work for me for 15 months *at my option,* under the follow-

ing conditions: * * * If I fail to offer you work as follows, you are free to seek employment elsewhere: car mileage plus the equivalent of 160 hours in any 31 consecutive days. * * * If any cause prevents you from working for me, it is assumed that such cause would prevent you from working for others. * * * If you breach any of the covenants herein contained you will immediately become liable for $500 as liquidated damages * * *". As stated, the only breach alleged is that defendant did not work for the plaintiff when he was requested to do so. It will be noted that the plaintiff was *not obligated* to employ the defendant for 15 months or for any other specified time. The plaintiff, by inserting the clause "at my option", reserved the right to give the defendant work if he saw fit and if he did not, there was no obligation on him to do so, and the defendant would be without remedy. In other words, the defendant could not have enforced the contract. The plaintiff seeks to bind the defendant when he, himself, was not bound. A consideration of the entire instrument can lead to no other conclusion.

The contract most similar to the one under consideration which we have found is discussed in Wright v. Fuel Oil Co., 342 Mo. 173, 114 S.W.2d 959. In that case, plaintiff sought to recover damages for breach of contract. Plaintiff owned a bulk plant for the storage of oil and gasoline, and also owned certain trucking equipment suitable for the distribution of gasoline and petroleum products from said bulk plant. The plaintiff leased his plant to the defendant on certain terms and conditions. The pertinent and vital provision of that contract reads: " 'The operator (plaintiff) agrees to promptly unload and place in storage at such bulk plant such gasoline and petroleum products *as the company may elect from time to time to deliver to such bulk plant* (italics supplied); and to haul and transport from such bulk plant to the various stations of the company, including the service stations of the company's customers which it now has or may acquire' in East St. Louis; * * *." After reviewing many decisions, the court held that

the italicized clause made the contract unilateral and unenforceable. This opinion discusses and distinguishes the holding in many cases, including Laclede Construction Co. v. Tudor Iron Works, 169 Mo. 137, 69 S.W. 384, cited by plaintiff. In making the distinction, the court said of the opinion in the Tudor case, 114 S.W.2d 962: "The effect of the holding on the point of mutuality was that plaintiff's performance removed any question on mutuality." As a further distinction, the court also said: "by certain correspondence between the parties any question of mutuality was removed."

Plaintiff also cites Nelson v. Diffenderffer, 178 Mo.App. 48, 163 S.W. 271; Cox v. A. P. Green Fire Brick Co., 230 Mo.App. 774, 75 S.W.2d 621; City Ice & Fuel Co. v. Snell, Mo.App., 57 S.W.2d 440, and Warren v. Ray County Coal Co., 200 Mo.App. 442, 207 S.W. 883. These cases are to be distinguished on the facts or the issues made by the pleadings. For example, as said in the Cox case, 75 S.W.2d 625: "However, under the authorities, *the performance* on the part of the plaintiff, in and of itself, constituted an acceptance of the proposal and a consideration for the promise made by the promisor." The other cases cited involve that same principle of law, with which we agree. However, in the instant case we are discussing an *executory* instrument, not an executed contract. For that reason those cases, and others of similar import, are not controlling.

However, plaintiff contends that even though it be held that the contract is lacking in mutuality, it is nevertheless valid "because partially performed". He relies upon the authorities which announce the general rule that where one makes a promise, conditioned upon the doing of an act by another, and the latter does the act, the contract is not void for want of mutuality and the promisor is liable though the promisee did not at the time of the promise engage to do the act; for upon the performance of the condition by the promisee, the contract becomes clothed with a valid consideration which renders the promise obligatory. 12 Am.Jur. Sec. 14, page 512; Martin v. Ray County Coal Co., 288 Mo.

241, 255, 232 S.W. 149; Underwood Typewriter Co. v. Century Realty Co., 220 Mo. 522, 524, 119 S.W. 400, 25 L.R.A.,N.S., 1173. Plaintiff argues that since the defendant worked for him 5½ hours following the execution of the purported contract, this constituted such performance that the contract became clothed with a valid consideration. We think that general rule has no application to the instrument under consideration. Even though defendant worked for the plaintiff for a few hours, this did not obligate the plaintiff to furnish the defendant work at any future time. The plaintiff still had his "option" to furnish work or not as he liked.

 The plaintiff also contends that the contract is supported by valuable consideration by implication. He relies upon Section 431.020 RSMo 1949, V.A.M.S., which provides: "All instruments of writing made and signed by any person or his agent, whereby he shall promise to pay to any other, or his order, or unto bearer, any sum of money or property therein mentioned, shall import a consideration, and be due and payable as therein specified." In support of this contention, plaintiff says: "It has been held that in the absence of affirmative proof to the contrary, the law will import a consideration for the promise in a contract of this kind". He cites Scottish Rite Temple Association v. Lucksinger, 231 Mo.App. 486, 488, 101 S.W.2d 511, 512; and Smith v. Ohio Millers Mutual Fire Insurance Co., 330 Mo. 236, 49 S.W.2d 42. Those cases hold that the burden is on the defendant to prove failure or lack of consideration of a contract regular on its face. However, they have no application here because, as we have said, this contract shows on its face that it is unilateral and that the plaintiff is not obligated to do anything except such as he might *elect* to do from time to time. A contract must be valid on its face before the burden shifts to the defendant to prove failure or lack of consideration.

Furthermore, this instrument provides that if the plaintiff does not offer defendant work "equivalent of 160 hours in any 31 consecutive days", then the defendant is "free to seek employment elsewhere". There is no evidence in this record that the plaintiff made any such offer to the defendant. His testimony on this issue is too vague, indefinite and uncertain to say that it meets this provision of the alleged contract. The trial court would have been justified in rendering judgment for the defendant on this issue alone. This provision further emphasizes the fact that the plaintiff was not obligated to employ the defendant at all or for any specified time, but was at liberty to offer him work or not to do so, as plaintiff might choose.

From what we have said it follows that the written instrument was not an enforceable contract at the time of its execution and did not become enforceable as to unperformed provisions thereof by events subsequent to its execution.

The judgment is affirmed.

All concur.