Jesse S. KUTZ, Plaintiff–Appellant,

v.

CARGILL, INCORPORATED and Robert Silvey, Defendants–Respondents.

No. 56778.

Missouri Court of Appeals,
Eastern District,
Southern Division.

July 31, 1990.

Tom K. O'Loughlin and Kathleen Anderson Wolz, O'Loughlin, O'Loughlin, & McManaman, Cape Girardeau, for plaintiff-appellant.

John P. Jacoby and John S. Sandberg, Shepherd, Sandberg & Phoenix, St. Louis, for defendants-respondents.

SATZ, Judge.

Plaintiff, Jesse Kutz, (Kutz) appeals from the trial court's entry of summary judgment in favor of defendants, Robert Silvey (Silvey)[1] and Cargill, Incorporated (Cargill). We affirm.

At the risk of sounding like a common scold, we note again that the record on appeal is, at best, barely sufficient. This is not the first time this Court has been faced with an imprecise record when reviewing a trial court's ruling on a motion for summary judgment. *See, e.g. Johnson v. Johnson*, 764 S.W.2d 711, 713 (Mo.App.1989). Repeatedly, attorneys have elected to live dangerously by relying on a record in this Court which does not show the exact record the trial court had before it when it made its ruling on the motion for summary judgment. *See, e.g. Hill v. Air Shields, Inc.*, 721 S.W.2d 112, 116 (Mo.App.1986). Having said this, we take the present record as we find it.

Plaintiff Kutz is a farmer in Perry County, Missouri. Defendant Cargill is a corporation doing part of its business through one of its divisions known as Nutrena Feeds Division. Defendant Silvey is an employee of Cargill in its Nutrena Feeds Division (Nutrena).

Kutz purchased feed for his cattle from Nutrena. Silvey was the salesman. The feed allegedly caused Kutz's cattle to founder.

Kutz sued Silvey and Cargill in a three count petition, captioning the counts as: Count I—Declaratory Judgment of Cancellation [of Release], Count II—Breach of Contract and Warranty; and Count III— Fraud and Misrepresentation.

Kutz's specific allegations of fact are neither clear nor explicit. Our pleading principles may have abolished the technicalities of pleading. They do not abolish the need for clear thinking and clarity. *Bennett v. Mallinckrodt, Inc.*, 698 S.W.2d 854, 867 (Mo.App.1985), *cert. denied*, 476 U.S. 1176, 106 S.Ct. 2903, 90 L.Ed.2d 989 (1986).

We read Kutz's petition as making the following allegations. In September, 1985, Silvey initiated conversations with Kutz in which Silvey recommended a new feed for

---

1. We shall refer to Mr. Kutz and Mr. Silvey as Kutz and Silvey for convenience, with no intent to be disrespectful.

Kutz's cattle. Based upon Silvey's recommendations, Kutz entered into a contract with Nutrena for the suggested feed. Kutz's cattle ate the feed from Nutrena and foundered. As a result of the cattle's foundering, Kutz incurred substantial veterinary costs, and a loss of profit when he eventually sold the cattle.

Because of Kutz's complaints to Silvey regarding the feed, Silvey agreed to return to Kutz the purchase price of the feed. Silvey presented to Kutz both a check in the amount of the purchase price and a document. Silvey told Kutz that the document was a receipt for the check and that Nutrena requested a signed receipt as proof that Silvey had delivered the check to Kutz. The document was not a receipt, but was a full release of all claims which Kutz might have against Cargill and Silvey.

Silvey's representation that the release was a receipt was intentional and false. This representation was material. Kutz relied on the representation "when executing the release."

Kutz pleaded these allegations in Count I and repeated them in identical language, by incorporation, in counts II and III. Based upon these allegations, Kutz requested the court, in Count I, to "cancel" and "void" the "Release Agreement"; in Count II, he prayed for $10,000 for "Breach of Warranty and Contract"; and, in Count III, he prayed for $10,000 actual damages and $150,000 punitive damages for "Fraud and Misrepresentation."

Silvey and Cargill filed a joint motion for summary judgment supported by the "release" document and parts of the depositions of Kutz and Silvey. Just prior to the hearing on the motion, however, Silvey and Cargill received Kutz's Suggestions in Opposition to their Motion in which Kutz argued the "release" document when signed by Kutz contained no language showing it was a "release." This was contrary to Kutz's allegations that he was told by Silvey the "release" document was a "receipt" when, in fact, it was a full and complete release at the time it was signed and executed by Kutz. To meet this apparent change in Kutz's legal position, Silvey and Cargill filed the affidavit of Harry Brown, the "administrative manager" for Nutrena. Based on this record, the court granted the joint motion for summary judgment.

To review the grant of summary judgment here, we view the evidentiary record before the trial court in the light most favorable to Kutz. *Eugene Apler Const. Co. Inc. v. Joe Garavelli's of West Port, Inc.*, 655 S.W.2d 132, 135 (Mo.App.1983). Summary judgment should be granted when there is no genuine issue of material fact, and the moving party is entitled to a judgment as a matter of law. Rule 74.-04(c). We will affirm the summary judgment if, as a matter of law, it is sustainable on any theory. *Roberts Fertilizer, Inc. v. Steinmeier*, 748 S.W.2d 883, 886 (Mo.App. 1988).

On appeal, Kutz argues there is a genuine issue as to whether the "release" document contained release language when Kutz signed it. This argument is misdirected and, thus, misses the mark.

In his pleadings, Kutz admits the "release" document contained release language when he signed it. He alleges:

13. On October 14, 1985, only seven days after the delivery of the last load of feed, Defendant Silvey presented to the Plaintiff the check in the amount of $443.30 plus a document which Defendant Silvey told the Plaintiff was a receipt for the check, which receipt was required to be signed by Nutrena (sic) to acknowledge the fact that Silvey had delivered the check to the Plaintiff for reimbursement of the feed.

14. In truth and in fact, the "receipt" was a full and complete release of all claims the Plaintiff might have against the Defendant and its agents.

15. The representations with respect to the release were false and fraudulent.

Kutz never amended his petition to change these allegations to read that the "release"

document did not contain release language when he signed it. Thus, his allegation that the document was a release stands, and this allegation of fact is binding on him. *State Farm Mut. Ins. Co. v. Koenigsmark*, 717 S.W.2d 271, 273 (Mo.App. 1986).

■ Moreover, even if Kutz had amended his petition to include his new allegation, he failed to present any evidence to contest the Brown affidavit, which refutes the new allegation. In his affidavit, Brown states: the document in question contained release language when it was sent to Silvey; the same document was returned to Brown with Kutz's signature; and the release language was not altered or modified after it was signed. Kutz's failure to contest this affidavit with verified facts raises no genuine issue of fact for trial. *Construction Escrow Serv. v. St. Charles Motor Inn*, 724 S.W.2d 603 (Mo.App.1986).

■ Kutz's second argument on appeal is directed at the language the trial court used in its order granting the motion for summary judgment. In its order, the court states that Kutz failed to raise a "genuine issue of material fact" because Kutz's "testimony and pleadings concerning ... Silvey's representations fail to give rise to an actionable fraud so that [Silvey and Cargill] are entitled to summary judgment ... as a matter of law."

Kutz challenges this order by arguing that his allegations are governed by the principles of constructive fraud based upon a "confidential relationship" and not governed by principles of "actionable fraud." We disagree.

All the parties rely on *Chmieleski v. City Products Corp.*, 660 S.W.2d 275, 294 (Mo.App.1983) to define the elements of the "confidential relationship" perceived by Kutz. These elements are:

1) as between the parties, one must be subservient to the dominant mind and will of the other as a result of age, state of health, illiteracy, mental disability, or ignorance;

2) things of value such as land, monies, a business, or other things of value which are the property of the subservient person must be possessed or managed by the dominant party;

3) there must be a surrender of independence by the subservient party to the dominant party;

4) there must be an automatic or habitual manipulation of the actions of the subservient party by the dominant party; and

5) there must be a showing that the subservient party places a trust and confidence in the dominant party.

More succinctly stated, a confidential relationship exists between two parties when one trusts and relies on the other. There also must be, however, evidence showing the one party placed a special trust in the other party, related to the management of the former party's business or property, and evidence showing this trust was so placed because the latter party influenced and broke the will power of the former party. *See, e.g. Masoner v. Bates County Nat. Bank*, 781 S.W.2d 235, 239 (Mo.App. 1989).

To state the obvious, Kutz simply does not allege the elements of a confidential relationship between him and Silvey, even reading Kutz's allegations most liberally in his favor. *See Appendix*. Moreover, reading the depositions of Kutz and Silvey most favorably to Kutz does not raise a genuine issue of fact about, at least, two of the necessary elements.

Without detailing those depositions here, they simply show a single, arms-length transaction between Kutz and Silvey. There is no showing that Silvey managed Kutz's cattle raising, nor that Kutz surrended his independent judgment to Silvey, nor that Silvey automatically or habitually manipulated Kutz's thoughts or actions.

Judgement affirmed.

SMITH, P.J., and GRIMM, J., concur.

APPENDIX

IN THE CIRCUIT COURT OF PERRY
COUNTY, MISSOURI AT
PERRYVILLE, MISSOURI

Jesse S. Kutz,

Route 7

Perryville, MO 63755

Plaintiff,

vs.

Cargill, Incorporated,

doing business as Nutrena

Feeds Division, a Corporation

and Robert Silvey

210 W. 7th Street

Farmington, MO 63640,

Defendants.

Case No. CV386–50CC

PETITION

COUNT I

DECLARATORY JUDGMENT OF
CANCELLATION

April 29, 1986

Plaintiff Jesse Kutz for his cause of action on Count I states as follows:

1. Plaintiff is a citizen and resident of Perry County, Missouri, residing at Route 7, Perryville, Missouri 63775.

2. Defendant Cargill, Inc., is a Corporation whose principal place of business is Minneapolis, Minnesota but who is authorized to do business in the State of Missouri. Defendant Cargill, Inc., does business through one of its divisions known as Nutrena Feeds Division.

3. Defendant Robert Silvey is a individual who at all times relevant was employed by Cargill, Inc. and acting within the scope of his authority and employment.

4. Plaintiff is a farmer engaged in general farming operations in Perry County, Missouri. In September and October of 1985 the Plaintiff acquired eight steers and fifty heifers of mixed breed for the purpose of placing into a feed lot for finishing in the normal course of his general farming operation.

5. Plaintiff was contacted by Defendant Robert Silvey for the purpose of entering into a contract for the purchase of feed to be sold by Defendant Cargill, Inc. for the purpose of feeding Plaintiff's cattle.

6. Defendant Silvey, for himself and on behalf of Defendant Cargill, Inc. viewed the Plaintiff's cattle and made a recommendation to the Plaintiff for a selection of feed to be fed to Plaintiff's cattle. Defendant Silvey promised, warranted and represented to the Plaintiff that Cargill, Inc., had a feed which could be given to his cattle on a full feed basis without limitation or restriction as to amount to be placed in the Plaintiff's self-feeders which could be used to bring the cattle to full feed without danger of founder or other health problems.

7. Relying on the warranties and representations made by Defendant Silvey on behalf of himself and Defendant Cargill, Inc., the Plaintiff entered into a contract with Nutrena Feeds Division for the purchase of the feed recommended by Defendant Silvey. Pursuant to that contract, Perryville Feed and Produce, Inc., at the express direction of the Defendants delivered the following feed to the cattle:

(a) Thirty-five hundred pounds of feed recommended by the Defendants was delivered on or about Thursday, October 3, 1985 and placed by Perryville Feed and Produce, Inc. in the Plaintiff's feeders.

(b) Approximately two thousand pounds of the recommended feed was again placed in the feeders by Perryville Feed and Produce, Inc., on Monday, October 7, 1985.

8. Defendant Silvey for himself and for Defendant Cargill, Inc. further represented that Plaintiff's cattle would gain three pounds a day would perform well both in terms in daily gain and feed efficiency on the Defendants' feed and would be ready to market on or before December 15, 1985. In fact, the Defendants representations regarding the feed were false or it was un-

known by the Defendants whether the representations were true or false.

9. The Defendants through their agents, either provided the Plaintiff with a defective feed which was not in conformity with the contractual arrangements, representation and warranties made or, alternatively, negligently caused to be delivered to the Plaintiff the wrong feed.

10. As a result of the breach of contract, warranties or through the negligence in selection of the feed or by delivery of the wrong feed, the Plaintiff's cattle consumed an excess amount of the feed, foundered, became diseased, performed poorly, did not gain well, were caused to have low feed efficiency and further caused the Plaintiff to incur substantial veterinarian bills, interest charges and other related costs.

11. Plaintiff became concerned about the consumption of the feed shortly after the last delivery on Monday, October 7, 1985. As a result of the concern expressed by the Plaintiff to the Defendants, Defendant Silvey came to the Plaintiff's feed lot on or about October 14, 1985 and assured the Plaintiff the correct feed was delivered and selected by the Defendants.

12. Because of the Plaintiff's complaints about the excessive consumption, Defendant Silvey offered to return the sum of $443.30, representing the purchase price of the feed. A check was delivered from Defendant Silvey to the Plaintiff at that time.

13. On October 14, 1985, only seven days after the delivery of the last load of feed, Defendant Silvey presented to the Plaintiff the check in the amount of $443.30 plus a document which Defendant Silvey told the Plaintiff was a receipt for the check, which receipt was required to be signed by Nutrena to acknowledge the fact that Silvey had delivered the check to the Plaintiff for reimbursement of the feed.

14. In truth and in fact, the "receipt" was a full and complete release of all claims the Plaintiff might have against the Defendant and its agents.

15. The representations with respect to the release were false and fraudulent.

16. The Plaintiff at the time of the execution of the release by him, was unaware of the false and fraudulent nature of the representations made by Defendant Silvey and believed he was signing a receipt for the check delivered on that same day.

17. The representations made by Defendant Silvey to the Plaintiff were important and material.

18. The Plaintiff relied on the representations made by Defendant Silvey when executing the release.

19. The actions of Defendant Silvey were done intentionally and with the purpose of obtaining a release from the Plaintiff for substantial damages to the Plaintiff's cattle at a time Defendant Silvey knew that he had caused to be delivered the wrong feed to the Plaintiff or had selected the wrong feed and at the time when Defendant Silvey knew the Plaintiff's cattle would be damaged by the feed.

20. As a direct result of the actions enumerated herein, the Plaintiff has suffered substantial damages as follows:

(a) Loss of profit as a direct result of the breach of contract and warranties made by the Defendants in the amount of $10,000.00;

(b) Damages as a direct result of the fraudulent misrepresentations in the amount of $10,000.00;

21. Punitive damages should be entered against both Defendants to deter them from further activities such as those involved in this suit and to punish them for the intentional, fraudulent, willful and malicious misrepresentations.

22. The acts of the Defendants with regard to the release constitute fraud in factum.

WHEREFORE, Plaintiff respectfully requests this Court to enter its order cancelling and holding as void the Release Agreement dated October 14, 1985 and for such other relief as the Court deems just and proper.

## COUNT II

### BREACH OF CONTRACT AND WARRANTY

Plaintiff Jesse Kutz for his cause of action on Count II states as follows:

1. Plaintiff incorporates Paragraphs one through twenty-two of Count I herein.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment against the Defendant Cargill, Inc. and for the Plaintiff in the amount of $10,000.00, for Plaintiff's costs and such other relief as the Court deems just and proper.

## COUNT III

### FRAUD AND MISREPRESENTATION

Plaintiff Jesse Kutz for his cause of action on Count III states as follows:

1. Plaintiff incorporates Paragraphs one through twenty-two of Count I.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment against the Defendants Cargill, Inc. and Robert Silvey and for the Plaintiff in the amount of $10,000.00 actual damages and $150,000.00 punitive damages, for his costs, and such other relief as the Court deems just and proper.

Respectfully submitted,

O'LOUGHLIN, O'LOUGHLIN & McMANAMAN
1736 North Kingshighway
Cape Girardeau, MO 63701
(314) 334-9104
By: /s/ Tom K. O'Loughlin II
    Tom K. O'Loughlin II—24611