James FENBERG, Plaintiff–Respondent,

v.

William GOGGIN, Defendant–Appellant.

No. 57600.

Missouri Court of Appeals,
Eastern District,
Division Three.

Dec. 4, 1990.

Ralph Levy, III, Clayton, for defendant-appellant.

Mary Jill Wehmer, Nelson Lewis Mitten, Clayton, for plaintiff-respondent.

SATZ, Presiding Judge.

This summary judgment action involves a dispute between two former close acquaintances over an alleged loan of $15,000.00. In a two count petition, plaintiff, James Fenberg, sued defendant, William Goggin, for $15,000: Count I for default on a loan in that amount, and Count II for what plaintiff characterizes as "money had and received." Defendant filed a two count counterclaim: Count I for $15,000 as the "reasonable" value of defendant's work in constructing "certain structures" on plaintiff's property, and Count II for $1,100 as the balance of commissions plaintiff owed defendant for defendant's sale of plaintiff's horses.

The trial court entered a summary judgment in favor of plaintiff and against defendant in the amount of $15,000 plus interest and costs, without specifying which of plaintiff's two counts supported the judgment. The court also granted plaintiff summary judgments on both of defendant's counterclaims. Defendant appeals. We reverse and remand.

To review the grant of the summary judgments here, we view the evidentiary record in the light most favorable to defendant. *Kutz v. Cargill, Inc.*, 793 S.W.2d 622, 624 (Mo.App.1990). Summary judgment should be granted when there is no genuine issue of material fact, and the moving party is entitled to a judgment as a matter of law. Rule 74.04(c).

The following facts are not in dispute. Plaintiff and defendant met in 1985. Defendant was a trainer of pleasure horses, and, in April and May of 1985, he trained two horses for plaintiff. Plaintiff was also interested in purchasing a "cutting" horse. According to the parties' briefs, "cutting" is an equestrian sport in which the horse and rider separate or "cut" a single cow from a small herd. The sport requires specially trained horses, a small herd of cattle and a facility designed for practicing cutting.

In February, 1986, plaintiff, defendant and two other men went to Oklahoma so that plaintiff could shop for a cutting horse at the ranch of Don Taylor. Because of defendant's knowledge of horses and cutting, he accompanied plaintiff on the trip. Plaintiff's claims stem primarily from the conversations he and defendant had at the ranch.

### Plaintiff's Count I

Based on his recollection of the conversations, plaintiff makes a two-fold argument to support the loan agreement alleged in Count I of his petition. First, plaintiff contends the record shows that he offered to make a loan to defendant for $15,000 so that defendant could buy a horse, Clark's Dandy Mac, from Mr. Taylor. Plaintiff contends that he paid this $15,000 to Mr. Taylor and defendant manifested his acceptance of plaintiff's loan by taking complete ownership of the horse. These contentions, however, rest on only selected parts of the record before us.

Defendant's recollection of the conversations about a possible loan, although not pristinely consistent, is quite different from plaintiff's. In his deposition, defendant said he did have a conversation with plaintiff about a possible loan at or near the barn on Mr. Taylor's property. That conversation, viewed most favorably to defendant and distilled, paraphrased and quoted from defendant's deposition, took place as follows:

Plaintiff: What are you "going to do about a cutting horse."

Defendant: I am not going to buy one because I have no money.

Plaintiff: "I'll make you a loan."

Defendant: I don't have any way of paying you back.

Plaintiff: "You can sell some horses you've got and pay me back."

Defendant: "I can't guarantee you anything."

Plaintiff: "You'll have to sign a note."

Defendant: "I don't have any money. I don't have any way of paying you back."

. . . . .

Then, in summary and apparently for emphasis, defendant again said "I didn't guarantee [plaintiff] anything." Defendant said he believed the horse was a gift.

■ On a motion for summary judgment, neither the trial court nor we are authorized to determine the credibility of statements or testimony made under oath. *See Weldon, Williams & Lick v. L.B. Poultry Co.*, 537 S.W.2d 868, 872 (Mo.App. 1976). That determination is for a fact finder at a complete trial.

The alleged loan agreement here, no different than other contracts, required not only a definite offer but an unequivocal acceptance. *E.g. Hyken v. Travelers Ins. Co.*, 678 S.W.2d 454, 458 (Mo.App.1984). According to defendant's deposition testimony, he never unequivocally accepted plaintiff's offer of a loan. His testimony contradicts plaintiff's recollection of the facts. Thus, a genuine issue of a material fact exists and summary judgment should not have been granted.

■ Plaintiff also argues that defendant is "estopped" from denying the existence of the loan agreement because defendant has "accepted the benefits" of the agreement, the horse, Clark's Dandy Mac, now registered in his and his wife's names. Plaintiff relies on *Long v. Huffman*, 557 S.W.2d 911, 915–916 (Mo.App.1977). Plaintiff's reliance is misplaced.

We need not detail the facts of *Huffman* here. The issue there, argued by plaintiff as relevant here, is clearly different and distinguishable. In *Huffman*, the defendant contended an employment contract, incidentally in issue, had been breached by plaintiff and, because of this breach, plain-

tiff should be denied equitable relief. The court noted the defendant knew of the facts causing the alleged breach but nevertheless worked for two years under the employment contract, receiving pay and benefits under the contract. Using the terms "estoppel" and "waiver", the court stated that defendant's conduct in accepting the benefits under the contract precluded him from contesting its validity. *Id.* 915.

In *Huffman*, there was no question that the defendant received the benefits under the employment contract. No other reason was expressed or implied for the benefits being paid to and received by the defendant. In the present case, however, defendant not only denies the existence of the loan agreement in his answer and deposition testimony, he contends the benefit of the alleged loan agreement, the horse, was in fact a gift. Defendant's ownership of the horse is, therefore, not inconsistent with his denial of the existence of the alleged loan agreement. Whatever the particular principle of law *Huffman* may stand for, waiver or estoppel or both, that principle is not applicable here.

### *Plaintiff's Count II*

■ In Count II of his petition, plaintiff alleges that "at the special insistance (sic) and request of defendant, plaintiff lent to defendant $15,000.00, which sum defendant agreed to repay to plaintiff on February 15, 1988; . . . but defendant has refused and failed to pay the same." Plaintiff captioned this Count as "Money Had and Received."

On appeal, plaintiff argues that an action for money had and received rests on the principle of unjust enrichment. Applying that principle here to the facts as perceived by him, plaintiff contends defendant's own deposition testimony shows that plaintiff did not intend the $15,000 he paid to Mr. Taylor to be a gift and that plaintiff expected defendant "to pay back the money by a certain date, which [defendant] has not done." Thus, plaintiff reasons, defendant has received the benefit of $15,000, which

in "equity and good conscience" should be paid back.

The principle central to all present day restitution awards, including money had and received, may well be the principle against unjust enrichment. But, "in the early development of restitution no such general idea existed, and restitution claims developed in association with various technical doctrines of earlier law." Dobbs, *Remedies*, § 4.2, p. 229 (1973). Thus, "the terminology of restitution is still very often the terminology of the legal fictions and forms" of earlier common law. *Id.* We, in Missouri, have not completely discarded the forms of the restitutionary actions based upon the principle of unjust enrichment, although, at times, we have said these actions are flexible. *See, e.g., Alarcon v. Dickerson*, 719 S.W.2d 458, 461 (Mo.App. 1986). Thus, the principle of unjust enrichment, isolated and alone, without its formal pleading baggage, may not state a substantive claim for relief.

Plaintiff reads his general allegations in Count II as a claim for money had and received, based upon the principle of unjust enrichment. Whether these allegations state a claim for relief, and, if so, whether they can withstand a motion for more definite and certain statement is not before us. What is before us is whether the record supports a summary judgment in favor of plaintiff for money had and received.

The claim for money had and received developed from assumpsit. *See, Jurgensmeyer v. Boone Hospital Center*, 727 S.W.2d 441, 443 (Mo.App.1987). It is a "common count" now covering a variety of factual patterns. *See*, 24 Mo. Digest 2d, *Implied Contracts*, I(A), (B). Arguably, the most relevant of these fact patterns to the facts here are money obtained by mistake, *see, e.g. Brandkamp v. Chapin*, 473 S.W.2d 786 (Mo.App.1971), fraud, *see, e.g. Teachers Credit Union v. Olds*, 553 S.W.2d 545 (Mo.App.1977), or duress, *see, e.g. Jurgensmeyer v. Boone Hospital Center, supra.* Each of these has its own elements peculiar to it. However, it is neither clear nor certain from plaintiff's allegations or argument which specific fact pattern or

"theory" of money had and received he has chosen. For example, on the present record, within our scope of review, we cannot say as a matter of law that plaintiff, as a reasonable, prospective lender, mistakenly believed he was lending money to defendant. More important, we are not permitted to become a witting or unwitting adversary of defendant, fashion a theory we are not certain plaintiff pleaded or argued, search the record for uncontroverted facts to support the elements of that theory and affirm the summary judgment without affording defendant an opportunity to challenge our strange conduct.

For these reasons, the grant of summary judgment in favor of plaintiff on plaintiff's two count petition must be reversed.

### Defendant's Count I

In Count I of his counterclaim, defendant alleges he built a cutting facility on plaintiff's property "at the special instance and oral request of the plaintiff" and plaintiff owes him $15,000.00 as the "reasonable value of [his] work and labor." Both parties agree that defendant's claim sounds in quantum meruit. Also, in their respective, limited deposition testimony before us, the parties agree that defendant orally promised to build the facility for plaintiff in exchange for plaintiff's oral promise to permit defendant to use the facility whenever defendant wished.

As we understand defendant's argument on appeal, he argues that plaintiff was not obliged to maintain the facility for any length of time nor was he required to retain ownership of the land upon which the facility was built. Therefore, defendant argues, plaintiff's promise to permit defendant to use the facility whenever defendant wished was an "unenforceable" promise. With no mutual promise from plaintiff to enforce, defendant argues, no contract was created and he thus has the right in quantum meruit to claim payment for the reasonable value of his work in building the cutting facility.

We cannot tell from defendant's argument and reasoning whether he is arguing the legal relationship created between him

and plaintiff was a voidable or a void contract. Be that as it may, the record before us shows that plaintiff promised to permit defendant to use the cutting facility whenever defendant wished. But, as defendant correctly notes, plaintiff was not required to retain ownership of the property. He could sell it or alienate it in anyway he saw fit. In effect, plaintiff retained the privileged power to avoid his promise. In reality, he promised nothing; therefore, his promise was an "illusory promise," neither enforceable against plaintiff, nor operative as consideration for defendant's return promise. *See, e.g., Middleton v. Holecroft,* 270 S.W.2d 90, 92–93 (Mo.App.1954). Calamari and Perillo, *Contracts,* § 4–17 (2d ed. 1977). In short, no contract was created. *Middleton, supra* at 92–93.

Plaintiff, however, argues that if there were no contractual relationship created by his promise to defendant, because of lack of "mutuality", a binding and enforceable contract was created by defendant actually performing his promise and by plaintiff permitting defendant the use of the cutting facility. Plaintiff relies on *Garrett v. American Family Mutual Ins. Co.,* 520 S.W.2d 102 (Mo.App.1974) and *Lesson v. Etchison,* 650 S.W.2d 681 (Mo.App.1983). Plaintiff's reliance is misplaced.

The issue in each of these cases concerned the enforcement of a unilateral contract, a promise in exchange for a performance. But, in each case, the promisor's promise was a real, enforceable promise, not an illusory one, with no enforceable obligation.

On the present record, plaintiff's promise is illusory. Thus, even if the legal relationship here is characterized as a unilateral contract rather than a bilateral one, plaintiff's promise still remains illusory and, therefore, cannot constitute consideration in exchange for defendant's performance. *Middleton v. Holecroft, supra* at 93–94.

Although this precludes the grant of a summary judgment to plaintiff on defendant's Count I, it does not end the matter. The record before us is limited, designed by the parties for a summary judgment action. Moreover, our scope of review in a summa-

ry judgment action is also limited. Arguably, on remand, plaintiff may be able to show his promise must be interpreted reasonably to mean that he promised to permit defendant the use of the cutting facility so long as plaintiff owned the property and also may be able to show that this promise, so interpreted, is adequate consideration for defendant's promise. *See, e.g., Johnston v. First Nat'l. Bank and Trust Co.,* 624 S.W.2d 500, 502–504 (Mo.App.1981). Depending on the additional evidence developed, this showing may be made with or without a threshold showing of ambiguity. *Id.*

Admittedly, plaintiff has never refused defendant the permission to use the cutting facility. However, even with this fact as part of a complete trial on remand, plaintiff may still be unable to show his promise is more than illusory. In that event, defendant may have a ripe claim in quantum meruit. We do not reach these issues here.

### Defendant's Count II

In Count II of his counterclaim, defendant alleges he sold three horses at the special instance and oral request of plaintiff and seeks $1,100 as the "reasonable value" of his work. According to defendant, the $1,100 is the balance owed him on the commission for the separate sales of these horses. On appeal, defendant has abandoned his claim for commission for the sale of one of these horses.

In the trial court and on appeal, plaintiff argues that defendant entered into an accord and satisfaction by accepting less commission on the sales of the two remaining horses than the commission defendant claims is now due and owing. We disagree.

Defendant and plaintiff disagree over whether plaintiff's claim is for a liquidated or unliquidated sum. This dispute is irrelevant. The issue here is whether the parties entered into an accord and satisfaction. The resolution of that issue, on the present record, does not turn on whether defendant's claim is liquidated or unliquidated.

"An accord is an agreement for the settlement of some previously existing claim by a substituted performance." *Edgewater Health Care v. Health Systems*, 752 S.W.2d 860, 868 (Mo.App.1988). "Satisfaction is the performance of such agreement." *Id.*

 An accord and satisfaction requires "a well-understood and concluded agreement to settle all demands in dispute." *Penney v. White*, 594 S.W.2d 632, 636 (Mo. App.1980) (liquidated claim). "Payment of part of a debt does not satisfy the whole debt in the absence of an agreement supported by consideration." *Id. See also Gulfport Wholesale Lumber Co. v. Boeckeler Lumber Co.*, 287 S.W. 799, 800 (Mo. App.1926) (unliquidated claim), and *Pidcock v. Williams*, 214 Mo.App. 248, 259 S.W. 899, 901 (1924) (unliquidated claim). Acceptance of partial payment does not work an accord and satisfaction unless it is clear from the circumstances the partial payment was offered in full satisfaction of the claim and, if kept, the acceptance would operate as full satisfaction. *Pidcock, supra* at 901. This condition must be such that the offeree must understand the offer to include the condition. *Id.*

Plaintiff fails to cite, and our reading of the record fails to disclose, any evidence showing an agreement between plaintiff and defendant that the amounts paid by plaintiff would extinguish defendant's entire claim. Basically, plaintiff relies on one operative fact: defendant's receipt of payment of sums less than the total 10% commission. This receipt of a lesser sum than claimed, plaintiff contends, constitutes an accord and satisfaction. Plaintiff cites *Weiss v. Duro Chrome Corp.*, 207 F.2d 298 (8th Cir.1953). Plaintiff's reliance is misplaced.

In *Weiss*, the court was applying Missouri law, but the facts in *Weiss* are significantly different than the facts here. In *Weiss*, the defendant reduced the percentage of commission it paid to plaintiff, and plaintiff accepted the reduced commissions for more than a year. However, the defendant clearly informed the plaintiff that, pursuant to a contractual provision, it was lowering the commission rate. *Id.* at 299. Moreover, each commission check was accompanied by a statement specifically showing what the plaintiff was due. *Id.*

The record here shows only that plaintiff paid money to defendant. The operative fact that this payment was made supports several different inferences, including the inference that the payment constituted only partial payment of or an installment on the full amount, if any, plaintiff owed to defendant. On the present record, we cannot say as a matter of law that the payments to defendant, without more, worked an accord and satisfaction barring defendant from recovering any amount due him.

Accordingly, we reverse the summary judgments entered in favor of plaintiff and against defendant and remand this cause for further proceedings.

SMITH and GRIMM, JJ., concur.