C. W. LONG, M. D., and C. W. Long & Associates, Inc., Respondents,

v.

Thomas Laurence HUFFMAN, M. D., Appellant,

and

C. W. Long & Associates, Inc., Third-Party Defendant.

No. KCD 28440.

Missouri Court of Appeals, Kansas City District.

Oct. 11, 1977.

John M. Carnahan, III, and James P. Ferguson, Springfield, for appellant; Greene, Cassity, Ferguson, Carnahan & Freeman, Springfield, of counsel.

Edward J. Murphy, Inc., Butler, for respondents.

Before SHANGLER, P. J., and WELBORN and HIGGINS, Special Judges.

SHANGLER, Presiding Judge.

This appeal comes from an injunction which restrains physician Huffman from the practice of medicine within a radius of 60 miles of the City of Butler for five years after termination of employment by Physician Long in accordance with the restrictive covenant provision of the contract between them. The appellant Huffman does not dispute that he violated the noncompetition covenant, but asserts equity should not give aid to remedy the breach because the terms of the restriction contradict the public policy of this state, and because respondent Long was himself in breach of the contract.

The appellant Huffman became acquainted with Long while still a senior medical student in 1972. He solicited employment with Long during the interim before internship. He worked for Long for eight weeks and then returned to Kansas City for further training. On July 28, 1972, the parties concluded a formal two-year employment contract to begin when Huffman completed internship. Huffman received $5000 as consideration for execution of the contract. The essential terms of the agreement provided that Huffman was to receive 40% and Long 60% of the net profits. Huffman was guaranteed a minimum of $25,000 per year, payable at the rate of a minimum of $2,000 per month. Huffman was given an option, upon the "approval of the Employer", to purchase an equal share in the clinic according to a predetermined formula. The contract also provided—in addition to the restrictive covenant—that the undertaking was personal and not assignable, transferable or delegable. This much of the facts is not disputed.

The appellant Huffman took up employment with Long under the contract of July 1, 1973, and worked to the completion of the two-year term. Prior to the commencement of that employment, Long had incorporated his practice as C. W. Long & Associates, Inc. Huffman testified that he first had certain knowledge of that change of business status when he arrived at the clinic in July of 1973. Long testified that some months earlier he told Huffman of his plans to incorporate and directed financial adviser

Finke to discuss the matter with him. Huffman conceded that he made no objection to the incorporation and throughout the association with Long was paid by corporate check.

During the second year of association, Huffman informed Long he wished to exercise the contract option to purchase an equal ownership in the clinic. Formal discussions resulted in an offer of contract by Long which Huffman rejected. He objected because the proposal offered Huffman the purchase of only 249 of the 500 shares in the Long Associates corporation. The other impediment to consent, according to Long, was that Huffman refused any provision for noncompetition. They renewed negotiations in early 1974 in the office of the attorney for Long. The memorandum of this meeting by Attorney Murphy discloses that Long then proposed to sell Huffman 250 shares [a one-half interest] in the clinic, and in place of a noncompetition clause, a penalty provision whereby Huffman was bound to pay Long $40,000 if he left within five years of the agreement, $20,000 within 5 to 10 years, $10,000 within 10 to 15 years, and whereby Huffman would sell back his interest in the corporation to Long for $1 if he left after fifteen years. These proposals were never embodied in a formal agreement. Huffman testified that the only time he was offered an equal interest in the clinic was two days before he left that practice. Long testified he always intended that Huffman have the option to purchase one-half of the clinic. They both agreed that Huffman never tendered money for the purchase.

At the completion of the two year employment term Huffman left the Long clinic and about a month later began his own practice in Butler. Huffman hired away from the Long clinic two employees—Margaret Sandeen and Gayle Cook—to work in his new office. He acknowledged that during the first month of this practice he sent fifty requests for medical records to the Long clinic office. Of these, about eighty per cent were concerning former patients of Dr. Long.

A petition for injunction followed to restrain Huffman from violation of the restrictive covenant provision of the contract. Huffman counterclaimed for an accounting of the finances of the clinic during the employment. The parties have deferred the accounting issue, and the trial court decree that Huffman be enjoined according to the terms of the restrictive covenant comes to us as a final appealable judgment.

■■■ Huffman argues first that such a restrictive covenant contradicts the public policy of this state against restraint of trade and, because of the need for medical practitioners, causes serious public inconvenience. He argues also that Long failed to show lack of an adequate legal remedy and proved no pecuniary damage from the Huffman conduct, and so may not have the aid of equity. The rule of law is to the contrary: Contracts of noncompetition between physicians and surgeons will ordinarily be enforced in equity because, for the breach of such a covenant, there is no adequate remedy at law and the very purpose of such a contract may be met only by exact conformance to the terms undertaken. *Thompson v. Allain,* 377 S.W.2d 465, 467[3] (Mo.App.1964). Thus, the injunctive remedy is peculiarly appropriate both because of the obligation of the contract and because the full damage to be suffered by the breach cannot be known certainly. *Mills v. Murray,* 472 S.W.2d 6, 18[20] (Mo. App.1971). Cognately, there is no need to prove damage to enforce a noncompetition employment agreement by injunction. *Reed, Roberts Associates, Inc. v. Bailenson,* 537 S.W.2d 238, 242[12–14] (Mo.App.1976).

■■■ A restrictive covenant is enforceable in equity if it is "limited as to area and time, reasonably necessary to protect the fair and legitimate contract rights and interests of the parties, and otherwise reasonable and not contrary to public policy." *Willman v. Beheler,* 499 S.W.2d 770, 777[17–

19] (Mo.1973). The covenant of the employment contract limited noncompetition to a sixty mile radius of Butler for a period of five years. There was testimony by Dr. Long and Gayle Cook, who had worked at the clinic for eighteen years, that patients came from as far as sixty miles away. And both *Willman* and *Allain,* supra, upheld five year restrictions on employments for the practice of medicine. Thus, as a matter of evidence, the covenant was proven to impose a restriction no greater than reasonably necessary to protect Long, and as a matter of law was otherwise reasonable. *Renwood Food Products v. Schaefer,* 240 Mo.App. 939, 223 S.W.2d 144, 152[5, 6] (1949).

▆ Nor does the established public policy of the state inhibit enforcement of an otherwise valid noncompetition employment contract between medical practitioners. That contention was expressly rejected in *Willman v. Beheler, supra.* That defendant asserted that to enforce the restrictive covenant would deny the people of St. Joseph the services of a skilled surgeon and so outweigh any benefit to the covenantor. The court first noted that the shortage in medical practitioners was pandemic, so his services were as valuable in one locale as in another. A more fundamental public policy is served, said the court, by the preservation of the obligations of contracts. *Willman v. Beheler, supra,* l. c. 777[17–19]. Huffman offered no evidence as to the need of doctors in Butler and the record indicates no shortage. The rationale of *Willman* controls. The noncompetition covenant assumed by Dr. Huffman was reasonable in time and place, consistent with public policy, and enforceable in equity by injunction.

▆ The appellant Huffman next contends that Long breached the employment contract in a number of ways, and thereby invokes the general principle that injunctive relief is not available to a party who has been the first to materially breach the undertaking. *Boten v. Brecklein,* 452 S.W.2d 86, 92[1, 2] (Mo.1972); 43 C.J.S. Injunctions § 84, p. 573. Huffman contends three antecedent breaches of contract by Long on principle prevent his recourse to equity for injunction: First, that the incorporation of the clinic practice by Dr. Long violated the prohibition against assignment of the contract obligation; second, that the failure to sell Huffman a half-interest in the clinic was an unreasonable exercise of his discretion to withhold consent; third, that the deductions from income for the retirement plan violated the contract provision as to the disposition of clinic income.

▆ The dispute as to whether the clinic was incorporated without the consent of Huffman, and so contrary to the terms of contract—even if a valid issue—is resolved by his conduct. Huffman acknowledged he was aware of the incorporation from the first day of the contract term, notwithstanding, he made no objection, worked in the corporation, and was paid well. This conduct of acquiescence induced Long to continue to employ, pay and benefit Huffman through the corporation, and now estops him to contradict his earlier consent. To deny enforcement of the restrictive covenant in these circumstances would be to allow a party to benefit from a contract he disaffirms. 31 C.J.S. Estoppel § 110(2). *Rodgers v. Seidlitz Paint and Varnish Company,* 404 S.W.2d 191 (Mo. 1966), estopped the plaintiff from assertion of claim to commissions, where with his knowledge and acceptance, his salary was increased in lieu of commissions. That is because one who waives a breach of the contract cannot set it up in justification of his own breach. *Phillips v. Todd,* 180 S.W. 1039, 1041[1] (Mo.App.1915); *Labor Discount Ct. v. State B & T Co.,* 526 S.W.2d 407, 425[22] (Mo.App.1967). Huffman is bound by the rule that a person who accepts benefits may be estopped to question the existence, validity, and effect of the contract from which they derive. That person will not be allowed to assume the inconsistent positions which affirm a contract in

part by acceptance of its benefits and disaffirm it in part by avoidance of its obligations. *DuBail v. Medical West Building Corporation,* 372 S.W.2d 128, 132[1–3] (Mo. 1933). Huffman accepted the benefits of the contract for the full employment term and must now accept the burden of the covenant not to compete to which he also agreed.

■ Huffman contends another antecedent breach of contract by Long prevents his recourse to equity for injunction: that Long unreasonably withheld consent ["approval"—in the terms of the contract] to convey one-half of the clinic to him. Huffman relies on the principle that where performance of a contract is to be to the satisfaction of the promisor [Long] he must exercise that judgment in good faith and as a reasonable man. 17 Am.Jur.2d Contracts, § 366. That is, the promisor may not act arbitrarily or capriciously and there must be a bona fide reason for his dissatisfaction. See, *Norman v. McLelland,* 354 S.W.2d 906, 910[4] (Mo.App.1962).

■ Taken in that perspective, Long was neither unreasonable nor in bad faith during the negotiations with Huffman. Their discussions commenced in March of 1974, more than a year before the end of the employment contract term, and seems to have continued until the day Huffman left the clinic. At one instance, as Huffman contends, the proposal was for less than an equal sale [of only 249 of the 500 corporate shares], but that was redressed in subsequent negotiations. The basic obstacle to agreement was the insistence that Huffman consent to a noncompetition clause. Thus, the question Huffman poses reduces to whether insistence by Long that Huffman consent to a comparable restriction—or the fixed penalty surrogated for that provision—as one of the agreements for the sale of stock was reasonable. The same considerations which validate a reasonable noncompetition agreement by one physician who comes into the employment of another also validate such a restriction when one practitioner, established by years of practice, agrees to share ownership with a novice. The competition which marks the medical practice and the time required to gain the confidence of a clientele makes the insistence on such protection not only reasonable but a practical necessity. Long conducted the negotiations in good faith and his insistence on a noncompetition clause, or the penalty, as a provision of sale was not a breach of contract.

■ Huffman contends that yet a third breach of contract denies him the right to injunction. He claims that payment of clinic funds to a retirement plan was completely outside the employment agreement and a breach of the contract definition of clinic income. He argues that because benefits of the plan do not vest until after employment for four years, appellant received no benefit from the fund since he worked only two years. The trial court found that in furtherance of their relationship · Long had a right to establish the plan and that Huffman received benefit in terms of tax savings. The court also found that Huffman knew about the plan and acceded to it. Huffman argues this point without the support of any relevant authority. It should be noted that the parties chose to defer trial of the accounting issue until the determination on review of the judgment for injunction. Among the funds for which Long is called to account, we are made to understand, are the sums contributed from the Huffman earnings to the retirement fund. The issue before us, however, is not what—if anything at all—Long owes Huffman under the contract for earnings paid into the retirement fund, but whether Long breached the contract by that practice and so forfeits the right to rely on its terms for injunction. As to that question, we must conclude as to the other claims of breach, that outside of a random inquiry as to why money retained for such purpose from his earnings not those of Long, Huffman accepted the benefits of the contract without

active objection to this known practice for the entire term of employment. It remains for the accounting action to determine the validity of the pension plan within the provisions of the contract and the right of Huffman to his contributions.

The judgment is affirmed.

All concur.