Jose V. BALLESTEROS, M.D.,
Plaintiff–Appellant,

v.

Randy JOHNSON, M.D., and Cardiology
and Critical Care Consultants, Inc.,
Defendants–Respondents.

Nos. 57969, 58016.

Missouri Court of Appeals,
Eastern District,
Division Three.

June 28, 1991.

David L. Campbell, Robert H. Wendt, Campbell & Campbell, St. Louis, for plaintiff-appellant.

Curtis C. Calloway, Eric Paulsrud, Lewis, Rice & Fingersh, St. Louis, for defendants-respondents.

CRANE, Judge.

Plaintiff Jose Ballesteros, M.D., appeals from the judgment of the circuit court denying his claim for an equitable accounting and granting injunctive relief in favor of his former employer and its sole shareholder to enforce a covenant not to compete. Defendants appeal from an order awarding plaintiff discovery sanctions in the amount of $2,500. We affirm the judgment of the trial court and reverse the order awarding sanctions.

Defendant Randy Johnson, M.D., is the sole shareholder of defendant Cardiology and Critical Care Consultants, Inc. [the Practice], a cardiology practice he began with another physician in 1984. Johnson first met with plaintiff in March, 1988 to discuss the possibility of plaintiff working for the Practice. Another physician, Dr. Frank Gafford, had been employed by the Practice since October, 1986. Gafford was paid a percentage of his billings. Johnson and plaintiff agreed to an arrangement whereby plaintiff was to be paid a percentage of his billings with a minimum guarantee of $8,000 per month for the first six months.

Plaintiff commenced practicing cardiology with Johnson on July 1, 1988. No written contract existed between the parties at that time. The parties continued to negotiate the terms of plaintiff's employment and several drafts of the contract were proposed by both parties.

Plaintiff needed $15,000 for the down payment on the purchase of a home which was scheduled to close on October 15, 1988. Johnson offered to have the Practice borrow the $15,000 from its bank and the Practice would in turn lend the $15,000 to plaintiff. The bank required proof that plaintiff had an agreement with minimum advancements guaranteed and a method of compensation agreed to in writing before it would lend the $15,000 to the Practice for the purpose of lending it to plaintiff. Additionally, plaintiff's mortgage lender required a letter containing the same information. The Practice's accountant would not provide that letter in the absence of a written agreement. Johnson informed plaintiff that the Practice would be unable to lend him the money unless he signed a written employment contract. A final version of the employment contract was signed by plaintiff on October 14, 1988.

The contract contained the following covenant not to compete:

Ballesteros shall not, during the term of his Agreement and within a period of one

(1) year after he is no longer employed by Johnson or the Practice: (1) service any patient of Johnson or the Practice (including the patients brought into the Practice by Ballesteros) as a medical physician in his individual capacity, as a member of a group of medical physicians; or (2) engage in general cardiology and critical care, cardiology and critical care consulting, heart catheterizations, echocardiography, Holter monitoring, electrocardiogram interpretations, or exercise stress testing, at or within the following described hospitals: Incarnate Word, Alexian Brothers Lutheran, Deaconess and Alexian Brothers Health Center, St. Anthony's, St. Elizabeth (Granite City, Illinois), St. Louis University Hospitals and any future hospitals where Johnson or the Practice may have admitting privileges at the time of termination of this Agreement; provided, however, the above referenced covenant not to compete shall not be applicable in the event Ballesteros is no longer employed by Johnson or the Practice due to: (a) default by Johnson or the Practice; or (b) his own disability.

Plaintiff was affiliated with Johnson and the Practice from July 1, 1988 until June, 1989. During this affiliation, plaintiff received compensation of $296,090.96, as well as other benefits. Beginning in March, 1989 plaintiff and Gafford began requesting an ownership interest in the Practice. In June plaintiff and Gafford informed Johnson that they would leave the Practice unless each was given a one-third interest in it. Johnson refused. Plaintiff and Gafford immediately formed their own cardiology practice under the name of Cardiology Consultants of St. Louis County, P.C., with offices located at the St. Anthony's Hospital complex and in Manchester, Missouri.

Plaintiff filed suit seeking an equitable accounting and injunctive relief barring enforcement of the covenant not to compete. Defendants answered and counterclaimed seeking temporary and permanent injunctive relief enforcing the covenant. A temporary restraining order was issued on June 29, 1989 restraining plaintiff from servicing any patient as set forth in the covenant not to compete, with the hearing on the preliminary and permanent injunction scheduled for August 7, 1989. As subsequently modified, the temporary restraining order provided in part:

IT IS FURTHER ORDERED that, until the said hearing, Defendant [sic] absolutely desist and refrain from soliciting the service of any patient of Johnson or the Practice ... or from engaging in general cardiology and critical care ... at or within the following described hospitals:....

The trial court entered its Findings of Fact, Conclusions of Law and Order which denied plaintiff's request for an equitable accounting and granted permanent injunctive relief.

### Plaintiff's Appeal

For his first point plaintiff contends that the trial court erred in denying an equitable accounting of all monies received by the Practice for services billed by plaintiff. We disagree.

Four elements are required to establish equitable jurisdiction for an accounting: the need of discovery, the complicated nature of the accounts, the existence of a fiduciary or trust relationship and the inadequacy of legal remedies. *Zickel v. Knell*, 357 Mo. 678, 210 S.W.2d 59, 62 (1948); *Kalberloh v. Stewart*, 378 S.W.2d 820, 824 (Mo.App.1964). It is within the discretion of the trial court to determine whether the facts establish equitable jurisdiction. *Wilson v. Hoover*, 342 Mo. 1182, 119 S.W.2d 768, 772 (1938); 1A C.J.S. Accounting § 15, p. 13 (1985). The trial court's exercise of discretion will be overturned only for an abuse thereof. *In re $29,000.00 in U.S. Currency*, 682 S.W.2d 68, 75 (Mo.App.1984); 1A C.J.S. Accounting § 57, p. 52. There was no abuse of discretion. The trial court found:

8. Since Joy Johnson has calculated reimbursements in good faith and there is no evidence that any substantial or intentional errors have been made in calculating Dr. Ballesteros' reimburse-

ments, his claim for an equitable accounting will be denied. Mrs. Johnson has provided an accounting of Dr. Ballesteros' reimbursements during the trial of this matter and Ballesteros and his accountant have already been provided an opportunity to inspect and copy all corporate documents which relate to patient billings and reimbursements to him. Under these circumstances, the Court concludes that it would be inequitable to order an accounting, which would likely be time-consuming and costly. There is no need for any further discovery or accounting to Dr. Ballesteros, who the Court concludes has been fairly and adequately compensated. Moreover, Ballesteros' claim for an accounting is premised upon an interpretation of the Agreement that requires reimbursement to him within forty-five (45) days of the month in which services were rendered, an interpretation which this Court has rejected.

The record supports the decision of the trial court. Joy Johnson, the bookkeeper for the Practice, testified for more than a full day and identified the worksheets on which she calculated all amounts paid to plaintiff as well as the underlying documents. Her worksheets and a sample of the underlying documents were admitted into evidence. Plaintiff and his accountant were given access to all underlying documents including "Day Sheets" and patient files. The trial court did not abuse its discretion in finding that there was no need for further discovery and in denying the request for an equitable accounting. Point one is denied.

■■■ For his second point plaintiff contends that the trial court erred in not quashing the temporary restraining order. A temporary restraining order maintains the status of the parties until the merits of their claim are resolved. *St. Louis County v. Village of Peerless Park*, 726 S.W.2d 405, 410 (Mo.App.1987). It does not purport to pass upon the merits of a controversy or dispose of any issue. *Zaegel v. Zaegel*, 697 S.W.2d 223, 225 (Mo.App.1985). The temporary restraining order terminated upon entry of the permanent injunction. Once a permanent injunction is granted, the issue of whether the temporary restraining order should have been quashed is no longer a live issue. *Peerless Park*, 726 S.W.2d at 410. The validity or invalidity of the temporary restraining order does not affect the validity of the permanent injunction. Point two is denied.

For his third point plaintiff argues that the trial court erred in granting a permanent injunction. He claims that the covenant not to compete was procured by fraud and duress, that it did not serve any legitimate business interest of defendants, and that defendants are barred from obtaining equitable relief by the "clean hands" maxim because of their material breaches of the contract.

■■■ We review the issuance of an injunction under the standard of *Murphy v. Carron* and will uphold the injunction unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Champion Sports Center, Inc. v. Peters*, 763 S.W.2d 367, 369 (Mo.App.1989). We give due regard to the trial court's opportunity to judge the credibility of the witnesses in making its findings on the evidence. *Mid-States Paint and Chemical Co. v. Herr*, 746 S.W.2d 613, 615 (Mo.App.1988).

■■■ Plaintiff claims he signed the covenant as a result of fraudulent misrepresentations made to him by Johnson 1) that the Practice's accountant required that the contract between Johnson and plaintiff be signed before he would issue a letter verifying his compensation to plaintiff's home mortgage lender; 2) that he would not enforce the covenant not to compete; and 3) that he would immediately execute an amendment to the agreement.

■■■ One of the essential elements of fraud is a false material representation. *Huttegger v. Davis*, 599 S.W.2d 506, 511 (Mo. banc 1980). Although plaintiff claims otherwise, the Practice's accountant testified that he said he could not write the letter in the absence of a signed contract.

This was sufficient evidence to establish that Johnson's representation of the same was not false. It is also clear that, in rejecting the claim of fraud, the trial court chose not to believe plaintiff's testimony that Johnson told him he would not enforce the covenant and would execute an amendment to the agreement in light of Johnson's testimony about the importance he placed on obtaining a covenant not to compete. We defer to the trial court's assessment of the credibility of these witnesses.

■■■ Plaintiff further claims that he was coerced into entering into the covenant by means of duress because the Practice would not loan him $15,000 to use as a down payment on his new home unless he signed the contract. Both parties agree that duress is established where a person is "subjected to pressure which overcomes his will and coerces him to comply with demands to which he would not yield if acting as a free agent." *United Telephone Company of Missouri v. Horn*, 610 S.W.2d 701, 705 (Mo.App.1980). The trial court did not err in concluding that plaintiff had not proven coercion or duress. The agreement was signed after five months of negotiations. Plaintiff was represented by counsel. Plaintiff's immediate need for the $15,000 loan and a new house was self-imposed. The Practice was under no independent obligation to lend him the $15,000 and was free to require a signed employment agreement as a condition of making that loan.

■■■ Plaintiff also claims that defendants are precluded from enforcing the covenant not to compete by their own material breaches of the employment agreement, arguing that defendants never made any attempt to pay plaintiff in accordance with the method set forth in paragraph 5 of the contract. That paragraph provided that payments would be made to plaintiff within 45 days of the end of each month. There was evidence that on a few occasions payments were late because of cash flow problems and difficulty with a new computerized billing system.

"[T]he question of whether an employer is precluded from enforcing a covenant not to compete as a result of its own breach is 'largely an issue of fact for the trial court.'" *Adrian N. Baker & Co. v. DeMartino*, 733 S.W.2d 14, 17 (Mo.App.1987) (quoting *Forms Mfg. Inc. v. Edwards*, 705 S.W.2d 67, 69 (Mo.App.1985)). There is substantial evidence to support the trial court's finding that defendants did not materially breach the employment agreement. The Practice's bookkeeper testified at length concerning payments made to plaintiff. The trial court found that she calculated these payments in good faith at all times. The fact that a few payments were made shortly after they were due does not constitute a material breach of the contract.

■■■ Moreover, plaintiff is estopped to deny enforcement of the covenant by his acceptance of substantial benefits under the employment contract. Over the course of 15 months, plaintiff accepted compensation and other reimbursements totalling over $300,000. A person who accepts benefits under a contract will not be allowed to affirm a contract in part by accepting its benefits and disaffirm it in part by avoiding some of its obligations. *Long v. Huffman*, 557 S.W.2d 911, 915–916 (Mo.App. 1977).

■■■ Finally, plaintiff's contention that defendant materially breached the agreement by turning off plaintiff's beeper and car phone, removing him from "call" duty, and taking other similar actions is without merit. Most of these actions were not covered by the agreement and all of these actions were taken as a result of plaintiff's termination of his association with defendants.

■■■ Plaintiff's final argument under this point is that the permanent injunction serves no legitimate business interest of defendant and violates public policy. Covenants not to compete are enforceable if they serve a legitimate business interest and are reasonably limited in time and space. *Osage Glass, Inc. v. Donovan*, 693 S.W.2d 71, 74 (Mo. banc 1985). Covenants not to compete are enforceable against physicians. *Willman v. Beheler*, 499 S.W.2d

770, 777 (Mo.1973); *Long,* 557 S.W.2d at 915.

Plaintiff does not debate the reasonableness of the covenant in terms of time or geography. Rather, he claims that its enforcement is unnecessary for the protection of Johnson's legitimate business interests. The evidence, however, was directly to the contrary. Johnson had established and developed his practice for several years before he associated with plaintiff, who had never been in private practice. Johnson desired to expand his practice at St. Anthony's Hospital. He specifically hired plaintiff to establish a patient base there, as Johnson spent most of his time at St. Louis University Medical Center. Prior to his association with Johnson, plaintiff had no patient or referral base. The covenant clearly was necessary to protect Johnson's legitimate business interest in his practice.

Plaintiff also contends that enforcement of the covenant would violate public policy as contained in § 334.100 RSMo (Supp. 1989) which provides, in pertinent part:

2. The board may cause a complaint to be filed ... for any one or any combination of the following causes:

\* \* \* \* \* \*

(4) ... unethical conduct ... in the performance of the functions or duties of any profession licensed or regulated under this chapter, including, but not limited to, the following:

\* \* \* \* \* \*

(b) Attempting, directly or indirectly, by way of intimidation, coercion or deception, to obtain or retain a patient or discourage the use of a second opinion or consultation;

\* \* \* \* \* \*

(j) Terminating the medical care of a patient without adequate notice or without making other arrangements for the continued care of the patient;

\* \* \* \* \* \*

(5) Any conduct or practice which is or might be harmful or dangerous to the mental or physical health of a patient or the public;....

Plaintiff cites no legal authority for his proposition that this statute prohibits covenants not to compete between physicians but argues only that it is a statutory expression of public policy which supercedes the holding in *Willman.* In *Willman* the Missouri Supreme Court held that covenants between physicians were not against public policy even though enforcement would deprive a particular community of a particular physician's services. 499 S.W.2d at 777. Section 334.100 is a statutory provision setting forth the grounds for denial, revocation or suspension of a medical license. A physician's voluntary agreement to not practice at specific hospitals or to refrain from soliciting particular classes of patients does not constitute the unethical medical conduct set forth in the statute for which a medical license may be denied or revoked. Plaintiff was not barred from treating any patient who chose to seek his services. Plaintiff was enjoined for one year from soliciting previous patients and from delivering cardiology services at specified hospitals. Point three is denied.

*Defendants' Cross Appeal*

Defendants contend that the trial court abused its discretion and erred in imposing sanctions of $2,500 for failure to produce defendant Randy Johnson and witness Joy Johnson, as managing agent for the Practice, for their depositions. Plaintiff filed a notice of hearing and a motion to compel discovery and for sanctions on July 28, 1989. Plaintiff also made an oral motion for an expedited hearing on the motion for sanctions. The oral motion was sustained. The hearing was scheduled for 3:00 p.m. that day. The record establishes that a delivery service delivered the motion for sanctions and notice of hearing to the reception desk of the law firm of defendants' counsel at 2:21 p.m.[1] The circuit court

1. This time was established by an exhibit and was relied on by both parties in their pleadings and affidavits relating to the motion to reconsider and vacate sanctions. In the original notice, plaintiff's attorney had certified that he had

entered its order sustaining the motion for sanctions at 3:50 p.m. Defendants' counsel filed an affidavit that he did not personally receive the notice until 4:00 p.m. He did not appear at the hearing.

■ Defendants first contend that they did not receive reasonable notice of the hearing. Rule 61.01 provides for the award of sanctions for failure to make discovery. The trial court has discretion to impose sanctions for failure to comply with discovery procedures. *Roach v. Consolidated Forwarding Co.*, 665 S.W.2d 675, 682 (Mo.App.1984). All provisions of this rule condition sanctions "upon motion and reasonable notice to the other parties." Reasonable notice must provide "an '[o]pportunity for a litigant to present his views as to the matters instantly before the court which may affect his rights.'" *State ex rel. Murphy v. Aronson*, 330 S.W.2d 140, 145 (Mo.App.1959). Delivery of notice of a hearing to a law firm receptionist thirty-nine minutes before it is scheduled to begin does not provide an opportunity for a litigant to appear and does not constitute "reasonable notice" under Rule 61.01.

■ Defendants next contend that the order granting sanctions fails for lack of evidentiary support. Rule 61.01(f) authorizes imposition of the sanctions listed under Rule 61.01(d) for a party's failure to attend his own deposition. Rule 61.01(d)(4) provides that the court may make "An order requiring the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure [to provide discovery]." Plaintiff's motion for sanctions was unverified. There is nothing in the record that suggests that plaintiff offered any evidence to establish what expenses were incurred or that any expenses were caused by the failure of defendant Randy Johnson and the defendant Practice by Joy Johnson to appear for their depositions. A motion does not prove itself and the burden is on the moving party to prove its allegations. *Johnson v. St. Mary's Health Center*, 738 S.W.2d 534, 536 (Mo.App.1987). There was no proof of personally served defendants' attorney at 1:30 p.m. on July 28.

expenses to support the amount of the award.

■ Defendants further contend that plaintiff failed to comply with Local Rule 33.5 of the 22nd Judicial Circuit which provides:

> The Court will not hear oral argument nor take under submission any motion ... for sanctions to enforce discovery, unless there is filed with the Court, together with the notice of hearing, a certification signed by the attorney for the party calling for the hearing which states that he has attempted to discuss the matter with opposing counsel in a good faith effort to resolve the disputed issues.

The record does not indicate that any certificate of attempt was filed, nor does the motion for sanctions contain any recitation that the parties had attempted to resolve the dispute in good faith. Properly adopted rules of court are "binding on the court and its officers as well as on the parties and their counsel, and ordinarily it is the duty of the court to enforce them." *Bank v. Pfeil*, 537 S.W.2d 680, 681 (Mo.App.1976) quoting from 21 C.J.S. Courts § 176. Failure of the court to enforce this rule contributed to the unreasonableness of the notice. For all of the above reasons, the order awarding sanctions is reversed.

The judgment of the trial court is affirmed. The order awarding sanctions is reversed.

REINHARD, P.J., and STEPHEN, J., concur.