John COOK, d/b/a Cook's Computer, Appellant,

v.

Edward MARTIN, d/b/a ASDE, Inc., Respondent.

No. WD 59471.

Missouri Court of Appeals, Western District.

April 2, 2002.

Bruce Dean Enlow, St. Joseph, for Appellant.

Scott W. Ross, Maryville, for Respondent.

RONALD R. HOLLIGER, Judge.

John Cook d/b/a CCP Online (hereinafter "Cook") appeals from the trial court's judgment in favor of Respondents Edward Martin, Martin Jones and ASDE, Inc. (collectively, "ASDE") regarding Cook's petition for equitable accounting. Finding that Cook was entitled to an accounting, we reverse the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Cook and ASDE, Inc., entered into a business arrangement to provide internet services in the town of Maryville, Missouri. Cook provided the hardware to service the customers, while ASDE opened an office in Maryville and acted as the contact with the individual customers. It is not clear from the briefs when the two businesses began this relationship, though Cook alleges that the relationship spanned "several years." Shortly after Cook and ASDE began providing services to Maryville residents, Cook successfully bid for a state contract to provide Internet access for students at Northwestern Missouri State University. Students as well as other customers would sign up at ASDE's office in Maryville and payments were made at that office.

Maryville customers could receive Internet service through the Cook/ASDE arrangement[1] through a variety of plans. Plans were first divided by the number of hours of Internet access available to the customer per month. Each plan was assigned a monthly charge, with a higher charge for those plans providing the customer a greater number of available hours per month. Within each plan, the customer could receive a discount on the base rate by paying for six or twelve months of service in advance. Under the arrangement between Cook and ASDE, all customer payments were to be received by ASDE. ASDE would retain a processing fee for all new customers, and the remaining funds would be deposited by ASDE into a local bank account owned by Cook.

Cook would then apply the funds to equipment costs and other necessary expenses associated with the service. Cook and ASDE would then divide the residual funds equally.

ASDE would also advise Cook of each subscriber's user ID, password, and rate plan (this varied depending on number of hours of service per month). ASDE would also advise Cook as to when each customer's service was to begin and when it would be terminated. Cook was initially advised of whether a customer had prepaid for service or was billed for each month's service, but ASDE apparently ceased providing that information to Cook at some point.

In October 1998, ASDE apparently entered into an arrangement with a competing service provider, Earthlink, whereby Earthlink would also be providing Internet connectivity to customers through ASDE. It is unclear whether ASDE offered the Earthlink service alongside that provided by Cook or as a replacement for Cook's services.

Cook alleges that ASDE withheld information regarding their customers. He claims that ASDE stopped providing the customer "signup sheets" sometime in 1997. Cook also suggests that ASDE used proxy servers[2] to conceal customers from Cook.

On July 30, 1999, ASDE sent an email to Cook terminating their business arrangement. After that date, ASDE has claimed all customers under the Cook ASDE arrangement as its own, and has operated a

---

1. For reasons which will become clearer later we do not at this point characterize the arrangement as one of partnership, joint venture, principal and agent or otherwise at this time.

2. A proxy server is a specialized computer or similar device that enables multiple computers to utilize a single Internet connection. A proxy server may be ,configured such that it appears that only one computer is utilizing the connection (concealing that multiple machines may actually be connecting through the proxy server).

new service known as "ASDE.net." Cook alleged that he still had equipment and phone lines housed in ASDE's offices at the time ASDE broke off the relationship.

Cook subsequently brought an action[3] for accounting, asking that the trial court order ASDE "to deliver a complete accounting, all records, statements, and other documents in support thereof, a complete customer list including addresses for verification, an award of all funds not accounted for, an award of attorney fees, costs, and any such other relief the court deems just and reasonable." Cook's claim was also joined with general claims for damages, tortious interference with a business relationship, and replevin. These latter claims were either dismissed or settled by Cook prior to the conclusion of trial. At the time the case was submitted, the only remaining claim before the trial court was Cook's request for an accounting.

Cook alleged in his petition that he was entitled to an accounting because he had been in a fiduciary relationship with ASDE as ASDE was Cook's agent. Cook did not explicitly allege the existence of a partnership in his petition. However, he attempted to argue at trial that Cook and ASDE had entered into a partnership and, as partners owed a fiduciary duty to each other. ASDE objected to this change in Cook's position from the petition. Several objections were made by Cook when he attempted through testimony to characterize the relationship as a partnership so as to invoke the statutory right to an accounting under the Missouri Partnership Act, §§ 358.010, *et seq.*, RSMo. At one point ASDE's objection was overruled, but a slightly different objection, at another point but in a related context, was sustained.

In its judgment, the trial court held that a fiduciary relationship existed, but did not make any findings that Cook and ASDE had entered into a partnership. Nor did the court indicate why it believed that a fiduciary relationship existed. Despite the existence of a fiduciary relationship, the trial court found that Cook was not entitled to an accounting on the grounds that Cook had access to the same customer information as ASDE. The trial court, accordingly, entered judgment in favor of ASDE regarding Cook's petition for accounting. Cook appeals.

## DISCUSSION

Before beginning our review of Cook's point on appeal, it would be helpful to start by outlining the elements of equitable accounting actions. To establish a right to an equitable accounting, the plaintiff must prove four elements. *Ballesteros v. Johnson*, 812 S.W.2d 217, 220 (Mo.App. 1991). First, the plaintiff must show a need for discovery. *Id.* Second, the nature of the accounts must be complicated. *Id.* Third, the plaintiff must prove that a fiduciary duty existed between the parties. *Id.* Lastly, the plaintiff must establish the lack of any adequate remedy at law. *Id.*

---

**3.** This action was brought against Edward Martin, individually and in his capacity as registered agent of ASDE, Inc., as well as Martin Jones (who is apparently the other shareholder of ASDE, Inc.). ASDE, Inc., was not named as a defendant in the petition. ASDE, Inc. however is listed as a party on at least some of the subsequent filings in the case. The caption of the judgment lists ASDE, Inc., together with Martin and Jones, as a defendant to the case. There does not appear to be any question regarding the corporate status of ASDE during any time period relevant to the case at bar. No explanation exists in the record as to why Martin and Jones did not seek to be dismissed or how, if formally ever accomplished, the corporation was added or substituted as a defendant in the action. No complaints are raised about the status of any parties or whether they are properly before us.

Cook raises a single point on appeal. He contends that the trial court committed error in holding that Cook failed to prove the first element of his claim. He specifically contests the trial court's "finding that there was a free flow of information between the parties prior to the termination of the business relationship that allowed both parties to have access to the same basic information on various customer accounts." He argues that this finding was against the weight of the evidence and contrary to existing law. Contending that he was "improperly excluded from information on the accounts that was exclusively in the hands of [ASDE]," Cook argues that the trial court's findings were erroneous.

As this was a bench-tried case, our standard of review is supplied by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Legacy Homes P'ship v. Gen. Elec. Co.*, 50 S.W.3d 346, 353 (Mo.App. 2001). We may reverse the judgment below only if we conclude that the judgment "is not supported by substantial evidence, is against the weight of the evidence, or misstates or misapplies the law." *Id.* We defer to the trial court's findings of fact, accepting the evidence and the inferences drawn therefrom favorable to the judgment, while disregarding contrary evidence. *See Ralston Purina Co. v. Leggett*, 23 S.W.3d 697, 700 (Mo.App.2000).

In his point on appeal, Cook also relies upon a claim that there was a partnership between himself and ASDE. Cook raises the issue, attempting to take advantage of § 358.220, RSMo, which grants a partner the right to a formal accounting if that partner is "wrongfully excluded from the partnership business or possession of its property by his copartners." We note, however, that the trial court made no express finding in regards to the existence of a partnership, instead finding only a fiduciary relationship between Cook and ASDE. Nor can we read within the judgment any implication of such a finding. Cook does not appeal the failure of the trial court to make an express finding that the parties were indeed partners. It is also questionable that the issue was properly before the trial court, given that Cook failed to make any allegations in his petition that the parties had entered into a partnership. We also note that Cook, both in his petition and his trial testimony, took the position that ASDE was his agent for the signing up of accounts and collection of fees. Given that there is no challenge to the trial court's failure to find a partnership existed between Cook and ASDE nor any challenge by either party to the court's finding of a fiduciary relationship arising from some other status of legal relationship, we decline to consider that issue. Instead, we will proceed upon the explicit finding by the trial court that a fiduciary relationship existed between Cook and ASDE. Additionally, it is unnecessary to resolve the partnership question because we find that Cook was entitled to an accounting under general principles of equity without regard to the partnership statutes.[4]

As outlined previously, to prevail in an equitable accounting action, the plaintiff must establish four elements. The result in the present matter turns upon the first of those elements: whether there was a

---

4. We are aware that upon dissolution of a partnership statutory procedures are provided for the winding up of partnership affairs and the distribution of partnership assets and liabilities. Although Cook claimed generally at trial that he would have liked to have had 6 months or so to wind up the business rather than having the relationship terminate abruptly Cook neither in pleadings, testimony or even on appeal makes reference to the applicable statute, § 358.400, RSMo, nor does he ever request such relief.

need for discovery. The trial court made express findings that the flow of information between the parties was such that both Cook and ASDE had access to the same information during their business dealings with each other. The ultimate question, then, is whether this finding was against the weight of the evidence. As discussed above, we grant considerable deference to the trial court regarding such issues.

■ The testimony presented at trial suggests that ASDE determined whether the correct amount of customer payments were received solely by utilizing records contained on Cook's server. From those records, both Cook and ASDE could determine the number of customers in each rate category, and the number of months of service provided to each customer. Thus, the amount of customer payments in a given month could be derived by multiplying the number of customers in a given rate category by the corresponding monthly rate. Indeed, the testimony of Edward Martin stated that ASDE utilized only the records on Cook's server to determine whether the correct amount of customer payments had been received from month to month. There was no testimony adduced that ASDE used other documents or information in conducting its monthly accounting.

Martin's testimony, however, also revealed that ASDE could not calculate the exact amount of expected customer payments by the above method. There was evidence that a customer could receive a price break by prepaying for six or twelve months of service. Cook suggests that the information regarding prepaid accounts was exclusively within the control of ASDE, and that ASDE did not always provide that information to Cook. ASDE argues in its brief that "[w]hile the revenues might not line up with the number of

customers and rate plans at a given moment, the averages over time would be *nearly* identical." (Italics added). There was no evidence suggesting whether the number of prepaid accounts was substantial enough to result in any marked deviation in the net amount derived from the calculation described above. ASDE posits that the prepaid accounts do not materially affect the conclusion reached by the trial court because incorporating the discount for prepaid accounts would not significantly alter the results of the above calculation.

ASDE cites no authority for the proposition that a party otherwise entitled to an accounting is deprived of that right if the amount of money involved is small. Moreover, its argument ignores the fact that although the information regarding payments could be determined from information on Cook's server, that information was derived from deposits made to Cook's bank account made by ASDE, not by Cook. From the data available to Cook, he could not determine whether there might be customer payments that were neither reported to him by ASDE nor deposited into Cook's bank account.

Finally, and most importantly, ASDE's argument in support of the judgment ignores the fact that the customer information available to Cook also did not specifically identify the customers by name, address, etc. Cook clearly, as part of his action, was requesting not only an accounting for funds due and collected (or owing), but for specific customer information as well. Although ASDE makes brief reference to the customers being its own, that position is inconsistent with its failure to question on appeal the court's finding of a fiduciary relationship. Cook admits that he has no exclusive rights to the customers. That admission, however, does not deprive Cook of access to identifying information about the customers

that his business serviced through ASDE. Such information was not equally available to Cook at the time that ASDE terminated the relationship.

For the reasons stated, the trial court's judgment is reversed and the matter remanded for entry of a judgment directing an accounting of the amounts and sources of fees collected by ASDE during the time of its relationship with Cook and for production of customer identifying information during that period. In the event that any monies are due either party the court may proceed as provided under general principles of equitable accounting actions.

HAROLD L. LOWENSTEIN, Presiding Judge, and THOMAS H. NEWTON, Judge, concur.