McRAE, P.J.,
Dissenting:
¶ 29. Being very familiar with the majority opinion that is now being authored by Presiding Justice Smith, I agree with it. However, I would go farther and overrule on the issue of non-compete contracts as applied to medical professionals just as we require that lawyers cannot have non-compete clauses in their employment contracts with associates.
¶ 30. This Court has recognized the public policy concerns implicated by non-competition agreements between attorneys. The Comment to Rule 5.6 of the Rules of Professional Conduct states as *900 follows: “An agreement restricting the right of partners or associates to practice, after leaving a firm not only limits their professional autonomy, but also limits the freedom of clients to choose a lawyer.” Rule 5.6 specifically forbids employment agreements between attorneys that contain non-competition provisions. This rule was adopted in 1987. Miss. Rules of Prof 1 Conduct R. 5.6. (amended 1998). This same rule should apply to physicians and their partners overseeing them because this affects their professional autonomy and the freedom of patients to choose and have access to their physician of choice.
¶ 31. The American Medical Association Ethical Opinion 9.02 “discourages any agreement which restricts the right of a physician to practice medicine for a specified period of time or in a specified area upon tei-mination of an employment, partnership or corporate agreement.”
¶ 32. Lamar points out that the AMA does not have rule-making authority in Mississippi, and that no such authority has heretofore declared such non-competition agreements to be against public policy. However, most practicing doctors are members of the AMA, and there is little doubt that, if the AMA had rule-making authority, it would clearly adopt a rule for doctors similar to' our RPC 5.6 for attorneys.
¶ 33. Non-competition agreements between medical doctors are unenforceable, as they are in conflict with the public policy of patient choice. Lamar argues that the provision is enforceable because it was reasonable as to the duration of the restriction and the geographic scope. He cites several cases in which non-competition provisions were enforced which'were of longer duration and greater geographic scope than that at bar. See Texas Road Boring Co. v. Parker, 194 So.2d 885, 888 (Miss.1967) (upholding two-year restriction within 100 miles of any city in which employee worked); Redd Pest Control Co. v. Heatherly, 248 Miss. 34, 157 So.2d 133 (1963) (enforcing two-year restriction within 50 mile radius); Bagwell v. H.B. Wellborn & Co., 247 Miss. 564, 156 So.2d 739 (1963) (upholding two-year restriction within 75-mile radius of city); Frierson v. Sheppard Building Supply Co., 247 Miss. 157, 154 So.2d 151, 156 (1963) (enforcing two-year non-competition provision within 50 miles of city).
¶ 34. None of these cases involve non-competition provisions between doctors or physicians, so the public policy concerns of patient choice were not present. The only Mississippi case cited by Lamar involving doctors is Wilson v. Gamble, 180 Miss. 499, 177 So. 363 (1937). In that case, this Court upheld a non-competition agreement between.general practitioners in Greenville that prevented employee doctors from practicing within five miles of Greenville for five years after resigning. In doing so, the Court specifically noted that there were numerous general practitioners in Greenville to serve the public. A more modern view today would conclude that the patients’ choice should come first. Therefore, we should oven-ule Wilson v. Gamble as it conflicts with the modern day view. Since this decision, we adopted the modern view on not allowing no-compete contracts for lawyers as stated above in 1987. See Miss. Rules of Prof 1 Conduct R. 5.6 (amended 1998).
¶ 35. Lamar also cites cases from other jurisdictions in which such provisions were enforced between doctors. Med. Specialists, Inc. v. Sleweon, 652 N.E.2d 517 (Ind. Ct.App.1995); Ballesteros v. Johnson, 812 S.W.2d 217 (Mo.Ct.App.1991). Both of these cases are distinguishable.
¶ 36. In Ballesteros, the doctor was not prohibited from treating patients who independently sought his services. Field, on *901 the other hand, was enjoined from treating all patients in Lafayette County,. even if they independently sought his services. In Med. Specialists, Inc., the appellate court enforced the non-competition agreement, but only after finding that there were adequate infectious disease doctors to serve the area, and the enforcement of the provision would therefore not harm the public.
¶ 37. On the other hand, other jurisdictions have routinely refused to enforce non-competition agreements between doctors which limit patient choice and are therefore against public policy. In Iredell Digestive Disease Clinic, P.A. v. Petrozza, 92 N.C.App. 21, 373 S.E.2d 449 (1988), aff'd per curiam, 324 N.C. 327, 377 S.E.2d 750 (1989), the court refused to enforce a non-competition agreement where the doctor to be enjoined from practice was only one of two gastroenterologists in' the area.
Given the particular facts of this case, we believe the public’s interest in adequate health care must predominate over the parties’ freedom to contract ... The doctor-patient relationship is a personal one and we are extremely hesitant to deny the patient-consumer any choice whatsoever.
373 S.E.2d at 455. See also Statesville Med. Group, P.A. v. Dickey, 106 N.C.App. 669, 418 S.E.2d 256 (1992) (holding provision unenforceable as against public policy where the written employment contract was signed by both parties, based on reasonable consideration, and reasonable as to time and territory restrictions).
¶ 38. Other jurisdictions have struck down non-compete agreements based on the same reasoning. See Valley Med. Specialists v. Farber, 194 Ariz. 363, 982 P.2d 1277, 1283 (1999) (holding that provision would not be enforced due to that fact that “the doctor-patient relationship is special and entitled to unique protection”); Hoddeson v. Conroe Ear, Nose, & Throat Assocs., P.A., 751 S.W.2d 289 (Tex.Ct.App. 1988) (refusing to enforce non-competition agreement that prevented an ear, nose, and throat doctor from practicing within a county for five years, finding that to do so would be harmful to the public, as the doctor was one of only a few ear, nose, and throat specialists in the county).
¶ 39. In the instant case, the evidence is clear that a majority of the Ole Miss athletes preferred to see Dr. Field. Were that not the case, this litigation would have probably never been initiated. Forcing patients who preferred to see Dr. Field to travel at least twenty miles to a neighboring county undoubtedly interferes with their right to choose their physician.
¶ 40. The chancellor placed great emphasis on the fact that Dr. Lamar had been practicing orthopedic medicine in Oxford since 1973. However, just because he was there first does not grant him the exclusive right to the university athletic business and future patients. Non-compete agreements between physicians can be enforceable within certain contexts. Such as, a physician must abide by the duty of confidentiality toward his patient and must therefore protect the patients on his patient list from a former associate’s unwelcome solicitations. These concerns must be balanced with a patient’s right to use the physician of his or her choice. When Dr. Field was contacted by one of Dr. Lamar’s patients, Dr. Field should have had the right of access to Dr. Lamar’s medical file on the patient with the appropriate release and consent. A non-compete agreement cannot deny access to a patient’s choice of physician. Non-competition agreements must be reasonable on the restrictions and economic justifications. See Thames v. Davis & Goulet Ins., Inc., 420 So.2d 1041, 1043 (Miss.1982). Any exclusive right to impinge on a physician’s *902 autonomy and the patient’s right of choice would undoubtedly undermine the public policy interests.
¶41. For these reasons, I dissent in reversing the chancery court judgment, as I would render judgment for Dr. Field finally dismissing Dr. Lamar’s complaint and this action with prejudice because the non-competition agreement is unenforceable.
DIAZ, J., JOINS THIS OPINION. EASLEY, J., JOINS IN PART.